PAUGH ET AL., APPELLANTS, *v.* HANKS ET AL., APPELLEES.

[Cite as Paugh *v.* Hanks (1983), 6 Ohio St. 3d 72.]

(No. 82-993—Decided July 27, 1983.)

*Laybourne, Smith, Gore & Shapiro Co., L.P.A.,* and *A. Russell Smith,* for appellants.

*Messrs. Roderick, Myers & Linton, Mr. Robert F. Orth* and *Mr. Kurt R. Weitendorf,* for appellee Hanks.

*Buckingham, Doolittle & Burroughs Co., L.P.A., Mr. Charles E. Pierson* and *Mr. Stephen M. Hammersmith,* for appellee Clem.

*Olds, Olds & Lynett Co., L.P.A.,* and *Mr. James Olds, Jr.,* for appellee Mekina.

SWEENEY, J. Based on our recent pronouncement in *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131, we hold that summary judgments in the instant cause were improper and that, therefore, the cause must be reversed and remanded to the court of common pleas, since the plaintiffs here have stated a cause of action for the negligent infliction of serious emotional distress. Upon remand, we wish to guide the trial court, as well as the bench and bar, as to the limitations and scope of Ohio's recognition of the tort of negligent infliction of serious emotional distress.

Today, this court has the unique opportunity to establish standards in this ever evolving area of tort law. To our credit, we need not experience the slow, cynical recognition of an individual's right to emotional tranquillity; other jurisdictions have both the experiences and illustrations which aid us in adopting a course which brings our law securely in step with the modern advances made in medical and psychiatric science. While some may view our decision today as an unsettling quantum leap into this difficult area of the law, the situation is one of paramount necessity in fitting the law to the dynamics and nuances of modern twentieth century society. We view our decision today as a bold and promising step in ensuring an individual's right to emotional tranquillity which is redressable in an action against a blameworthy defendant for the negligent infliction of serious emotional distress.

I

Historically, this court, as well as others, has been reluctant to grant

compensation to victims of mental suffering for a myriad of reasons. As Dean Prosser pointed out, "[a]ll these objections have been demolished many times, and it is threshing old straw to deal with them." Prosser, Law of Torts (4 Ed. 1971) 327, Section 54. Needless to say, our decision in *Schultz, supra,* explored the traditional arguments against allowing recovery for the negligent infliction of mental harm, and we have found these arguments to be without merit.

The first step that courts took in this evolutionary cycle of defining the boundaries of liability for emotional distress in negligence actions was to allow recovery for mental distress as only "parasitic" or "pain and suffering" damages which were grounded in a traditional tort cause of action. Unless there existed a primary cause of action in a recognized area of tort liability, there would be no allowance for the recovery of mental harm damages. Thus, mental suffering was deemed genuine and compensable if and only if it was "parasitic" to a provable physical injury connected with an accepted tort cause of action.

Closely allied to this development, there evolved the "contemporaneous physical injury" or "impact" rule which this court rejected in *Schultz, supra.* The inventiveness of courts to find a contemporaneous injury or impact in many tenuous fact situations exemplified the absurdity inherent within the rule.[1]

The majority of courts which then rejected the "impact" rule replaced it with a theory of recovery known as the "zone of danger" rule. Under the "zone of danger" rule, a plaintiff-bystander to an accident need not have been physically injured or impacted, however, in order to recover; a plaintiff was required to be in close enough proximity to an accident to have been placed in actual physical danger, and, that as a result of being within the "zone of danger," a plaintiff-bystander's emotional suffering was deemed genuine because of the fear of that physical danger. Thus, the analysis implemented by Chief Judge Cardozo in *Palsgraf* v. *Long Island RR. Co.* (1928), 248 N.Y. 339, 162 N.E. 99, was adopted in a similar vein when an aggrieved party sought recovery for mental or emotional harm.

We view the "zone of danger" rule as being unduly restrictive. Although this rule appears to be a doctrine which allays apprehensions of opening the doors to unlimited liability, its rigid application prevents redress where the emotional injury is foreseeable and the resulting harm is great. In rejecting the "zone of danger" rule, we find persuasive the cogent reasoning of the Massachusetts Supreme Court, which stated in *Dziokonski* v. *Babineau* (1978), 375 Mass. 555, 564, 380 N.E. 2d 1295:

"The problem with the zone of danger rule * * * is that it is an inade-

---

[1] See *e.g., Morton* v. *Stack* (1930), 122 Ohio St. 115 (where contemporaneous injury was found in the inhalation of smoke); *Christy Bros. Circus* v. *Turnage* (1928), 38 Ga. App. 581, 144 S.E. 680 (where the court found the impact rule to be satisfied where the defendant's horse "evacuated his bowels" onto the plaintiff's lap); see, also, Prosser, *supra,* at 331, Section 54.

quate measure of the reasonable foreseeability of the possibility of physical injury resulting from a parent's anxiety arising from harm to his child. The reasonable foreseeability of such a physical injury to a parent does not turn on whether that parent was or was not a reasonable prospect for a contemporaneous injury because of the defendant's negligent conduct. Although the zone of danger rule tends to produce more reasonable results than the * * * [impact] rule and provides a means of limiting the scope of a defendant's liability, it lacks strong logical support."

Ten years prior to the *Dziokonski* decision, the California Supreme Court firmly disposed of the "zone of danger" rule in the celebrated case of *Dillon* v. *Legg* (1968), 68 Cal. 2d 728, 69 Cal. Rptr. 72, 441 P. 2d 912, and established a theory of recovery for emotional distress which is popularly known as the "bystander" rule. Instead of denying recovery to the mother in that case under the "zone of danger" rule, the California court decided to apply "* * * the general rules of tort law, including the concepts of negligence, proximate cause and foreseeability * * *," and allowed recovery for a plaintiff-bystander who was situated outside the zone of danger, but who witnessed the accidental death of her daughter, and as a result, suffered emotional distress. The *Dillon* court established a series of factors in which courts were to consider on a case-by-case basis, in determining whether the resulting emotional harm was reasonably foreseeable. *Id.* at 740-741.

These factors were not intended to be fixed guidelines with which an aggrieved plaintiff-bystander was required to satisfy in order to recover; rather, the factors were to be taken into account by courts in assessing the degree of foreseeability of emotional injury to the plaintiff.[2]

While liability became vastly increased under *Dillon,* the concept of duty was interpreted by other courts to remain fixed to the dual requirement that some physical injury be suffered as a result of the emotional harm and that the emotional harm result from observing a physical injury.[3] Most courts which have rejected the "zone of danger" rule have adopted the requirement that some sort of physical injury ensue as a result of the emotional harm in order to place a "guarantee of genuiness" that insures that the mental injury is serious enough to be rendered compensable. See, *e.g., Payton* v. *Abbott Labs* (1982), 386 Mass. 540, 437 N.E. 2d 171; *Schultz, supra,* at 138-139 (Holmes, J., dissenting); Restatement of Torts 2d (1965), Section 436 (A).[4]

---

[2] See Nolan & Ursin, Negligent Infliction of Emotional Distress: Coherence Emerging from Chaos (1982), 33 Hastings L.J. 583, 588-589.

[3] See, Note, The Death of the Ensuing Physical Injury Rule: Validating Claims for Negligent Infliction of Emotional Harm (1981), 10 Hofstra L.Rev. 213, 221.

[4] Restatement of Torts 2d, Section 436A, reads:

"If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance."

Although courts require a physical manifestation as "parasitic" to a mental distress action, this requirement has not prevented recovery in situations dealing with the negligent handling of corpses, nor has it barred recovery in cases involving the negligent forwarding of telegraph messages.[5]

Dean Prosser concluded that liability is imposed in these types of cases because of "* * * an especial likelihood of genuine and serious mental distress, arising from the special circumstances, * * * serves as a guarantee that the claim is not spurious." Prosser, *supra,* at 330, Section 54.

"The reasoning that has supported the view that negligently caused emotional distress, without bodily harm, does not warrant recovery against a person who negligently caused that distress has relied on three assumptions (See Restatement [Second] of Torts § 436 A, comment b [1965]): (1) emotional distress which does not manifest itself physically is normally trivial; (2) physical harm guarantees the genuiness of the claim; and (3) the defendant's fault (i.e., its negligence) is not so great as to require making good a purely mental disturbance." *Payton, supra,* at 192 (Wilkins, J., dissenting).

Although we believe that a manifestation of physical harm which occurs as a result of serious emotional distress can assist a jury in determining whether a claim is compensable, we find that a limitation such as this may prevent a worthy plaintiff from recovering from a blameworthy defendant. As was stated by the Pennsylvania Supreme Court in *Sinn* v. *Burd* (1979), 486 Pa. 146, 160, 404 A. 2d 672:

"Advancements in modern science lead us to * * * conclude that psychic injury is capable of being proven despite the absence of a physical manifestation of such injury."

Along this line of reasoning, we embrace the insightful language of the Hawaii Supreme Court in *Leong* v. *Takasaki* (1974), 55 Haw. 398, 403, 520 P. 2d 758:

"* * * Because other standards exist to test the authenticity of plaintiff's claim for relief, the requirement of resulting physical injury, like the requirement of physical impact, should not stand as another artificial bar to recovery, but merely be admissible as evidence of the degree of mental or emotional distress suffered."

Furthermore, in rejecting this "ensuing physical injury" requirements, we agree with the California Supreme Court that the unqualified requirement of physical injury is deficient in that it is both under-inclusive and over-inclusive. See *Molien* v. *Kaiser Foundation Hospitals* (1980), 27 Cal. 3d 916, 928, 167 Cal. Rptr. 831, 616 P. 2d 813. Therefore, we hold that a cause of action may be stated for the negligent infliction of serious emotional distress without the manifestation of a resulting physical injury. Proof of a resulting physical injury is admissible as evidence of the degree of emotional distress suffered.

---

[5] See Note, Duty, Foreseeability, and the Negligent Infliction of Mental Distress (1981), 33 Maine L. Rev. 303, 310 (footnote 42).

## II

We believe that where a bystander to an accident states a cause of action for negligent infliction of serious emotional distress, the emotional injuries sustained must be found to be both serious and reasonably foreseeable, in order to allow a recovery.

## II A

In delineating the standards to guide Ohio courts in reviewing cases seeking damages for the negligent infliction of serious emotional distress, we wish to underscore the element of "seriousness" as a necessary component required for a plaintiff-bystander in order to sufficiently state a claim for relief. We view the standard of "serious" emotional distress as being a more reliable safeguard than an "ensuing physical injury" requirement in screening out legitimate claims. By the term "serious," we of course go beyond trifling mental disturbance, mere upset or hurt feelings. We believe that serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case. *Rodrigues* v. *State* (1970), 52 Haw. 156, 472 P. 2d 509; *Leong, supra; Molien, supra.*

A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia. *Molien, supra,* at 933, 167 Cal. Rptr. at 841, 616 P. 2d at 823.

In summary, we find that a rigid requirement which prevents a plaintiff from recovering from serious emotional harm except where a physical injury manifestation has ensued, completely ignores the advances made in modern medical and psychiatric science, and is akin to the cynical approach embodied in the "contemporaneous physical injury" or "impact" rule which we overruled in *Schultz.* Serious emotional distress can be as severe and debilitating as physical injury and is no less deserving of redress. *Schultz, supra,* at page 135. Therefore, at the outset, we believe that a court may decide whether a plaintiff-bystander has stated a cause of action by ruling on whether the emotional distress alleged is serious as a matter of law.

## II B

In the case *sub judice,* plaintiffs-appellants urge us to adopt the reasonable foreseeability test established in *Dillon.* A variation of this test can be easily adapted with prior Ohio law. With respect to the determination of whether a negligent injury is foreseeable, this court has stated that, "It is not necessary that the defendant should have anticipated the particular injury. It is sufficient that his act is likely to result in injury to someone. *Neff Lumber Co.* v. *First National Bank of St. Clairsville, Admr.* [1930], 122 Ohio St. 302, 309 * * *." *Mudrich* v. *Standard Oil Co.* (1950), 153 Ohio St. 31, 39 [41 O.O. 117]. See, also, *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 287 [21 O.O.3d 177].

Concomitant with this test of foreseeability, we add several factors which should be considered in order to determine the reasonable foreseeability of a negligently inflicted emotional injury to a plaintiff-bystander. These factors are by no means exclusive, and the mere failure of a plaintiff to satisfy all of them should not preclude an aggrieved party from recovery. Thus, the term "factors" should be underscored to alleviate any misconception that such factors are requirements. The purpose of these factors is to assist and guide the determination of whether the serious emotional injury was reasonably foreseeable to the defendant at the time the accident (which precipitated the cause of action) took place.

The factors to be considered in order to determine whether a negligently inflicted emotional injury was reasonably foreseeable include: (1) whether the plaintiff was located near the scene of the accident, as contrasted with one who was a distance away; (2) whether the shock resulted from a direct emotional impact upon the plaintiff from sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and, (3) whether the plaintiff and victim (if any) were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. *Dillon* v. *Legg, supra,* at 740-741.

In elaborating upon these factors, the *Dillon* court stated:

"The evaluation of these factors will indicate the degree of the defendant's foreseeability: obviously defendant is more likely to foresee that a mother who observes an accident affecting her child will suffer harm than to foretell that a stranger witness will do so. Similarly, the degree of foreseeability of the third person's injury is far greater in the case of his contemporaneous observance of the accident than that in which he subsequently learns of it. The defendant is more likely to foresee that shock to the nearby, witnessing mother will cause physical harm than to anticipate that someone distant from the accident will suffer more than a temporary emotional reaction. All these elements, of course, shade into each other; the fixing of obligation, intimately tied into the facts, depends upon each case.

"In light of these factors the court will determine whether the accident and harm was *reasonably* foreseeable. Such reasonable foreseeability does not turn on whether the particular plaintiff [*sic*] as an individual would have in actuality foreseen the exact accident and loss; it contemplates that courts, on a case-to-case basis, analyzing all the circumstances, will decide what the ordinary man under such circumstances should reasonably have foreseen. The courts thus mark out the areas of liability, excluding the remote and unexpected." *Id.* at 741. (Emphasis *sic*.)

Added to this, we believe that with respect to the first factor, the closer in proximity a plaintiff is to the accident, the more likely it will be that the plaintiff's injury is foreseeable. As far as the second factor is concerned, we believe that it is not necessary for a plaintiff to actually see the accident. Thus, for example, a contemporaneous observance of the accident through the sense of hearing will enhance the likelihood that the emotional injury was

reasonably foreseeable. With respect to the third factor, we believe that a strict blood relationship between the accident victim and the plaintiff-bystander is not necessarily required. Certainly a plaintiff who is affianced with the victim could very well be described as a close relation. Therefore, the more closely the plaintiff and the victim are related, the more likely it is that the emotional injury was reasonably foreseeable.

Although we adopt in close form the guidelines of reasonable foreseeability established in *Dillon,* it must be remembered that this court, unlike the *Dillon* court, does not limit recovery to that emotional distress which manifests itself in the form of some physical injury. Furthermore, we do not believe that it is necessary that the victim (whose safety was feared for by the plaintiff-bystander) even suffered actual physical harm. We believe that a cause of action for the negligent infliction of serious emotional distress may be stated where the plaintiff-bystander reasonably appreciated the peril which took place, whether or not the victim suffered actual physical harm, and, that as a result of this cognizance or fear of peril, the plaintiff suffered serious emotional distress. In this realm, we follow the reasoning of the Washington Supreme Court where it stated in *Hunsley* v. *Giard* (1976), 87 Wash. 2d 424, 436, 553 P. 2d 1096:

"* * * We decline to draw an absolute boundary around the class of persons whose peril may stimulate the mental distress. This usually will be a jury question bearing on the reasonable reaction to the event unless the court can conclude as a matter of law that the reaction was unreasonable. *See Leong* v. *Takasaki,* 55 Hawaii 398, 520 P. 2d 758 (1974)."

### III

We also observe that with respect to questions of proof,[6] expert medical testimony can assist the judicial process in determining whether the emotional injury is indeed, serious. *Schultz, supra.* However, lay witnesses who were acquainted with the plaintiff, may testify as to any marked changes in the emotional or habitual makeup that they discern in the plaintiff after the accident has occurred. The jurors themselves, can refer to their own experiences in order to determine whether, and to what extent, the defendant's conduct caused the serious emotion distress. *Molien, supra.*

Finally, we note that the determination of both seriousness and reasonable foreseeability must be accomplished on a case-by-case basis.[7] As the *Dillon* court observed, no fixed or immutable rule is capable of resolving all the cases brought under an action for the negligent infliction of serious emotional distress.

In conclusion, we hold that freedom from the negligent infliction of

---

[6] For an excellent analysis within this area, see Comment, Negligently Inflicted Mental Distress: The Case for an Independent Tort (1971), 59 Georgetown L.J. 1237.

[7] See Nolan & Ursin, *supra,* at 618-621.

serious emotional distress is entitled to independent legal protection, *Schultz, supra,* and that therefore, there exists a duty to refrain from negligently inflicting serious emotional distress. Where serious emotional distress to a plaintiff-bystander is the reasonably foreseeable consequence of a defendant's negligent act, a defendant's liability should be imposed by the application of general tort principles. *Rodrigues, supra.* Thus, when it is reasonably foreseeable that a reasonable plaintiff-bystander to an accident would not be able to cope with the emotional distress engendered by such circumstances, the trial court should conclude that the defendant's conduct is the proximate cause of plaintiff's injury and impose liability on the defendant for any damages arising from the consequences of his or her negligent act. *Leong, supra.*

In addition, with respect to the instant case, Mr. Paugh's claim for loss of consortium should also be considered in combination with all the pleadings and allegations contained within the plaintiffs' claims for relief.

Accordingly, for all of the foregoing reasons, we reverse the court of appeals' affirmance of the grants of summary judgment, and remand the cause to the court of common pleas for further proceedings consistent with this opinion.

*Judgment reversed and*
*cause remanded.*

CELEBREZZE, C.J., W. BROWN, LOCHER, C. BROWN and J. P. CELEBREZZE, JJ., concur.

HOLMES, J., dissents.

HOLMES, J., dissenting. I find that the attempt by this court to set some standards and guidelines for the open-endedness of the opinion in *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St. 3d 131, perhaps is salutary. However, allowing recovery for negligently inflicting mental stress without a showing that such manifested itself with some resulting physical injury still presents too broad a spectrum of recovery. I adhere to my position as expressed in my dissent in *Schultz.*