859 F.2d 921
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John L. BENEDICT, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellee.
 No. 87-3967.
 United States Court of Appeals, Sixth Circuit.
 Oct. 4, 1988.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges, THOMAS G. HULL, Chief District Judge.*
 PER CURIAM.
 
 
 1
 The plaintiff-appellant in this diversity case, John L. Benedict, appeals the district court's summary judgment order which dismissed his wrongful discharge claims against the defendant-appellee, General Motors Corporation. Benedict also appeals the district court's refusal to consider his handicap discrimination claim and the denial of his motion to amend the complaint to add a claim for negligent infliction of emotional distress. For the following reasons, we affirm the district court's judgment.
 
 I.
 
 2
 John L. Benedict was hired by General Motors Corporation ("GM") as a salaried employee in August 1963. He worked as a security officer for GM until he was discharged on June 30, 1986. GM never indicated any dissatisfaction with Benedict's job performance and evaluated him as a "highly effective" employee in 1984 and 1985. J.App. at 46-47.
 
 
 3
 Throughout his employment at GM, no oral statements were made to Benedict concerning the terms or length of his employment. However, the GM employee handbook stated that employment was on a month-to-month basis and that either GM or the employee could terminate the employment relationship. J.App. at 28. The handbook also stated that if an employee failed to "report to work at the end of an approved leave of absence and in accordance with the terms of the leave ...," he would be discharged. J.App. at 30.
 
 
 4
 In April 1986, Benedict began experiencing psychological problems as a result of his then recent divorce. Benedict sought and received treatment for his condition from Dr. Retizos, a psychiatrist, who advised him to take a leave of absence from work. Pursuant to GM policy, in order to qualify for a disability leave of absence from Work. Pursuant to GM policy, in order to qualify for a disability leave of absence, Benedict was required to provide verification of his disability. Dr. Retizos completed and submitted insurance claim forms to GM which verified Benedict's condition and indicated that he would be able to return to work on June 30, 1986. Dr. Retizos diagnosed Benedict as having an "adjustment disorder with [a] depressed mood." J.App. at 38.
 
 
 5
 In the period between April and June 30, 1986, there was little communication between Benedict and GM. According to Benedict, he had at least one conversation with his immediate supervisor, Al Montforton, who allegedly told him to "take all the time [he] needed" to get over his condition, and "more or less not to worry about it." J.App. at 137. According to GM, it tried three times to contact Benedict to determine whether he would be returning to work on June 30. Unsuccessful in these attempts, GM scheduled an appointment for Benedict to be examined by another physician on June 30. The letter advising Benedict of the exam was sent to the wrong address, however, and he did not receive it until July 1. Benedict neither reported for the examination nor returned to work on June 30, 1986.
 
 
 6
 After receiving the letter on July 1, Benedict called the GM personnel office and spoke with Raymond Skrovan, Assistant Personnel Director. Skrovan told Benedict that his employment with GM was terminated because he had neither reported for work at the conclusion of his approved leave of absence (the day before) nor provided the information required to extend the medical leave. Skrovan directed Benedict to come to the plant if he wished to discuss the possibility of reinstatement.
 
 
 7
 Benedict did not meet with Skrovan until August 11, 1986. At that time, Skrovan advised Benedict to provide medical verification of his inability to work after June 30, 1986 if he wished to be considered for reinstatement. On October 17, 1986, Benedict submitted to GM a report on his condition, prepared by Dr. David Falk, a psychologist. In the report, Dr. Falk stated that Benedict's "history strongly suggests a continuous pattern of disabling depression and agitation since March 1986, to the present time." J.App. at 67. Dr. Falk opined that Benedict suffered from recurrent major depression with melancholia, episodic alchohol abuse, and mixed personality disorder with passive-dependent, obsessive and paranoid features. Id. Skrovan and R.C. Brown, the Personnel Director, reviewed Dr. Falk's report, but deemed it inadequate medical substantiation of a continuing disability since June 30, 1986. Therefore, they refused to reinstate Benedict.
 
 
 8
 On January 16, 1987, Benedict filed the present action against General Motors, Raymond Skrovan and R.C. Brown in the Cuyahoga County (Ohio) Court of Common Pleas. Benedict's complaint alleged that the defendants' actions (1) created an employment contract by operation of the doctrine of promissory estoppel; (2) constituted wrongful dismissal and discharge; (3) constituted breach of an express or implied employment relationship; and (4) constituted a breach of the covenant of good faith and fair dealing contained in the alleged employment agreement. In its answer, GM admitted that Benedict's employment had been terminated on July 1, 1986, but denied the remaining material allegations in the complaint.
 
 
 9
 On February 24, 1987, the case was removed to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. Secs. 1441(a) and (b) (1982). On March 16, 1987, Benedict voluntarily dismissed Skrovan and Brown as defendants. On June 10, 1987, GM submitted its motion for summary judgment. On June 22, 1987, Benedict filed his response to GM's motion for summary judgment in which he asserted, for the first time, that GM breached its duty under Ohio law to make reasonable accomodations to him as a handicapped person. See O.R.C. Sec. 4112.02(A) (1971); Ohio Admin.Code, Civil Rights Commission, section 4112-5-08(E) (1987). Benedict also filed a motion to amend the complaint to add a claim for negligent infliction of emotional distress.
 
 
 10
 On September 29, 1987, United States District Court Judge John Manos issued a memorandum opinion granting GM's motion for summary judgment and denying Benedict's motion to amend the complaint. Judge Manos ruled (1) that under Ohio law, an employment relationship is presumed to be terminable at will; (2) that the facts and circumstances surrounding the employment relationship between Benedict and GM did not give rise to an implied employment contract; (3) that Benedict did not state a claim under the doctrine of promissory estoppel because there was no evidence that he relied on any statements allegedly made to him by GM personnel; (4) that no covenant of good faith and fair dealing existed because there was no express employment contract; and (5) that Benedict's claim of handicap discrimination was not properly before the court because it was neither raised in the complaint nor supported by the evidence. Judge Manos also denied Benedict's motion to amend his complaint to add a claim for negligent infliction of emotional distress, stating that the Ohio workers' compensation system provides the "exclusive remedy for employees in Ohio for injuries arising out of an employer's unintentional conduct." J.App. at 156.
 
 
 11
 Benedict timely filed this appeal from the district court's decision.
 
 II.
 
 12
 Benedict first contends that the district court erred in dismissing his wrongful discharge and promissory estoppel claims via summary judgment order. He argues that the statements allegedly made to him by his supervisor, on which he allegedly relied, gave rise to an implied employment contract which GM subsequently breached.
 
 
 13
 In Ohio, an employment relationship is presumed to be terminable at will. Mers v. Dispatch Printing Co., 19 Ohio St.3d 100, 483 N.E.2d 150 (1985). However, "the doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when a promise which the employer should reasonably expect to induce action or forebearance on the part of the employee does induce such action or forebearance, if injustice can be avoided only by enforcement of the promise." 19 Ohio St.3d at 105.
 
 
 14
 In the instant case, the undisputed facts show that Benedict did not rely on any statements that could reasonably be taken to modify the at-will relationship. First, Benedict denied that he relied upon any statements made to him by anyone at GM concerning the terms and conditions of his employment. J.App. at 26. Moreover, the statements allegedly made to Benedict could not reasonably be expected to induce any reliance on his part. In light of these considerations, the district court's judgment with respect to the wrongful discharge and promissory estoppel claims is affirmed.
 
 III.
 
 15
 Benedict next challenges the district court's refusal to consider his claim of handicap discrimination which he first presented in response to GM's motion for summary judgment.
 
 
 16
 Fed.R.Civ.P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In applying Rule 8(a)(2), "there is no duty [on the part] of the trial court or the appellate court to create a claim which appellant has not spelled out in his pleading." Clark v. National Travelers Life Insurance Co., 518 F.2d 1167, 1169 (6th Cir.1975), (quoting Case v. State Farm Mutual Automobile Insurance Co., 294 F.2d 676, 678 (5th Cir.1961)).
 
 
 17
 In the case at bar, neither the original complaint nor the proffered amended complaint alleged that Benedict's psychological difficulties constituted a "handicap" under Ohio law, or that GM's actions were taken because of Benedict's psychological condition. Moreover, although Benedict belatedly alleged that GM's actions were discriminatory, he presented no evidence to support this claim. Under these circumstances, the district court was correct in holding that Benedict's discrimination claim was not properly presented.
 
 IV.
 
 18
 Benedict's final contention is that the district court erred in denying his motion to amend the complaint to add a claim of negligent infliction of emotional distress. Although the district court denied Benedict's motion on the ground that the Ohio Worker's Compensation Act provides the exclusive remedy in Ohio for injuries arising out of an employer's unintentional conduct, both parties now agree that this ground of decision was error. Nevertheless, GM maintains that the district court's action was correct because Benedict has failed to state a claim, under Ohio law, for negligent infliction of emotional distress.
 
 
 19
 Under Ohio law, a cause of action may be stated for negligent infliction of emotional distress without the manifestation of a resulting physical injury. Paugh v. Hanks, 6 Ohio St.3d 72, 78, 451 N.E.2d 759, 765 (1983). However, recovery appears to be allowed only when the plaintiff or someone closely related to the plaintiff faced physical peril. See Brown Deer Restaurant, Inc., v. New Market Corp., No. 48910, slip op. at 6 (Ohio Ct.App.Cuyahoga Cty. March 28, 1985); Ballmer v. Toledo Day Nursery, Inc., No. 85-0862, slip op. at 3 (Ohio C.P. Lucas Cty. May 22, 1986). In addition, to support such a claim under Ohio law, the plaintiff must show that he has suffered "severe and debilitating" emotional injury. Paugh v. Hanks, 6 Ohio St.3d at 78.
 
 
 20
 In the instant case, Benedict's amended complaint did not allege, and the facts do not indicate, that he or anyone close to him was threatened with physical injury. Further, Benedict has not set forth evidence showing that the defendant's actions caused him to suffer "severe and debilitating" emotional injury. Given these factors, the district court's denial of Benedict's motion to amend the complaint was justified because the amendment would have been "futile" in light of Ohio law. See Marx v. Centran Corp., 747 F.2d 1536, 1550 (6th Cir.1984), cert. denied, 471 U.S. 1125 (1985).
 
 III.
 
 21
 For the foregoing reasons, the district court's judgment is hereby AFFIRMED.
 
 
 
 *
 Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennessee, sitting by designation