REYNOLDS et al., Appellants,

v.

WINGERS, INC. et al., Appellees.

[Cite as *Reynolds v. Wingers, Inc.* (1993), 86 Ohio App.3d 742.]

Court of Appeals of Ohio,
Shelby County.

No. 17–92–17.

Decided March 17, 1993.

*Hall, Tucker & Fullenkamp* and *James J. Fullenkamp,* for appellants.

*Elsass, Wallace, Evans, Schnelle & Co., L.P.A., Richard H. Wallace* and *Daniel D. Marshall,* for appellee, Wingers, Inc.

*Michael L. Smith,* for appellees, James Fletcher and John R. Thomas.

---

SHAW, Judge.

This is an appeal from a partial summary judgment, entered in the Shelby County Court of Common Pleas, in favor of the defendants-appellees, Wingers, Inc. and others, and against the plaintiffs-appellants, Donald E. and Tonya Reynolds.

In March 1991, plaintiff Donald Reynolds and defendants John R. Thomas and James E. Fletcher decided to open a restaurant in Sidney, Ohio. On April 1, 1991, the business was incorporated as "Wingers, Inc.," and one hundred shares of stock were issued. Reynolds received forty-five shares of stock, Thomas received forty-five shares of stock, and Fletcher received ten shares of stock.

The shareholders elected a board of directors made up of Reynolds, Thomas, Fletcher, Tonya Reynolds (Donald Reynolds' wife and the other plaintiff here), and Diane Thomas (John Thomas' wife). The directors then elected corporate officers. Reynolds was elected president of the corporation. Thomas was elected vice-president and Fletcher was elected secretary. Tonya Reynolds was elected treasurer and Diane Thomas was elected assistant secretary.

The restaurant opened in the summer of 1991 and, shortly thereafter, differences of opinion arose among the three shareholders over matters relating to the operation of the business. This conflict culminated on September 1, 1991, when, at a directors meeting called by Fletcher and Thomas, Reynolds was removed as president of the corporation. At a shareholders meeting held on October 13, 1991, Reynolds was also removed as a director of the corporation.

On October 1, 1991, Reynolds and his wife filed a twelve-count complaint seeking injunctive relief and damages for his allegedly wrongful removal. On November 22, 1992, the trial court denied plaintiffs' motion for a preliminary injunction. On May 8, 1992, defendants filed a motion for partial summary judgment. On July 31, 1992, the trial court granted summary judgment in favor of defendants as to the first, second, third, fourth, fifth, sixth, seventh, eighth and eleventh counts of the plaintiffs' complaint.

The plaintiffs thereafter brought the instant appeal, raising the following assignment of error:

"The trial court erred in granting summary judgment of Counts One, Two, Three, Four, Six, Seven, Eight and Eleven on appellants [*sic*] complaint in that genuine issues of fact and law existed on the treatment of appellants and their business relationships."

Civ.R. 56(C) provides, in relevant part:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

■ The first count of plaintiffs' complaint alleges that Reynolds was wrongfully terminated as president of Wingers, Inc. Reynolds argues that his election to a one-year term as president effectively placed him under a one-year employment contract and, therefore, his employment could not properly be terminated within that year.

R.C. 1701.64(B) provides:

"Unless the articles or the regulations otherwise provide:

" * * *

"(2) Any officer may be removed, with or without cause, by the directors without prejudice to the contract rights of such officer. The election or appointment of an officer for a given term, or a general provision in the articles, the regulations, or the by-laws with respect to term of office, shall not be deemed to create contract rights."

The 1955 comments of the Corporation Law Committee of the Ohio State Bar Association relating to this section explain:

"The second sentence of paragraph (B)(2) is new, in order to make certain that an officer does not acquire contract rights entitling him to continue in office merely because the articles or the regulations contain a general provision to the effect that officers shall be elected to serve until the next annual meeting and until their successors are elected and qualified, or contain some other general reference to term of office."

Furthermore, Section 2, Article V of the Code of Regulations of Wingers, Inc. provides in pertinent part:

"Each officer of the Corporation shall be elected by the Board of Directors, and shall hold office until the annual meeting of the Board of Directors following his election or until his earlier resignation, removal from office, or death. the [sic] Board of Directors may remove any officer at nay [sic] time, with or without cause."

Thus, the trial court was correct in finding that, as a matter of law, Reynolds has no legitimate contractual claims stemming from his election as president for an original term of one year. We find that the trial court did not err in granting summary judgment as to the first count of plaintiffs' complaint.

■ The second count of plaintiffs' complaint incorporates the allegations made in the first count, and further alleges that the September 1, 1991 meeting of the board of directors was held without Reynolds receiving adequate notice of the purpose of the meeting. It is alleged that Reynolds' termination was therefore wrongful and that Reynolds should be restored as president of Wingers, Inc.

R.C. 1701.61 governs meetings of directors and notice thereof, and provides in relevant part:

"Unless otherwise provided in the articles, the regulations, or the bylaws * * *:

"(A) Meetings of the directors may be called by the chairman of the board, the president, any vice-president, or any two directors;

" * * *

"(C) Written notice of the time and place of each meeting of the directors shall be given to each director either by personal delivery or by mail, telegram, or cablegram at least two days before the meeting, which notice need not specify the purposes of the meeting * * *."

Section 2, Article IV of the Code of Regulations of Wingers, Inc. addresses meetings of the board of directors and does not list any notice requirements in addition to those imposed by statute.

The record reflects that written notice of the September 1, 1991 directors meeting was personally delivered to Reynolds on August 29, 1991. Therefore, as the notice complied with the statutory requirements, and Reynolds alleges no other facts in support of his allegation of wrongful termination, we find that the trial court did not err in granting summary judgment as to the second count of plaintiffs' complaint.

The third count of plaintiffs' complaint alleges that Reynolds sustained $40,000 in damages, represented by a mortgage on his home held by the city of Sidney,

and caused by his wrongful termination. As this count alleges no additional facts in support of Reynolds' claim that he was wrongfully terminated, we find that the trial court did not err in granting summary judgment as to the third count of plaintiffs' complaint.

■ The fourth count of plaintiffs' complaint alleges that the action of the board of directors in removing Reynolds as president was in violation of R.C. 1701.59. R.C. 1701.59 sets forth the standard of care for directors and generally provides that directors must act in the best interests of the corporation.

Reynolds asserts that a loan to the corporation from the city of Sidney was contingent upon Reynolds' continuing in the management of Wingers, Inc. and that because of his termination, the corporation is now placed in danger of being in default on the loan. Accordingly, argues Reynolds, the acts of the directors in terminating him violated R.C. 1701.59.

The trial court, in light of its resolution of the first three counts of plaintiffs' complaint, found that reasonable minds could come to but one conclusion as to whether the directors of Wingers, Inc. violated their duty of care to the corporation, and that that conclusion is adverse to the plaintiffs. We agree, noting that Reynolds' termination is the only act alleged by plaintiffs to be evidence of this alleged breach of due care by the directors. As plaintiffs are unable to demonstrate that this termination was illegal or unlawful, we find that no genuine issue of material fact is raised by their allegations in count four of their complaint. Accordingly, we find that the trial court did not err in granting summary judgment as to the fourth count.

■ The fifth count of plaintiffs' complaint alleges that the defendants acted in bad faith toward Reynolds, as a minority shareholder. Reynolds alleges damages in the amount of $45,000 for the "improper bad faith actions towards Plaintiff, by Thomas and Fletcher."

In support of their claim, plaintiffs rely on *Estate of Schroer v. Stamco Supply, Inc.* (1984), 19 Ohio App.3d 34, 19 OBR 100, 482 N.E.2d 975. Plaintiffs cite the *Schroer* holding that "[s]tockholders in a close corporation owe one another substantially the same fiduciary duty in the operation of the enterprise owed by one partner to another, to deal *inter sese* in the utmost good faith." *Id.*, paragraph one of the syllabus.

However, as noted by the trial court, the *Schroer* case is not dispositive here. The *Schroer* case dealt with a "squeeze-out" of a minority shareholder by the manipulation of a stock repurchase by the corporation. *Schroer* did not deal with the removal of a minority shareholder as officer and director of the corporation.

Moreover, while a fiduciary owes a duty of good faith and fair dealing, the majority shareholders in the case before us followed the proper procedures for

the actions taken, as set forth by statute and their own code of regulations. While Reynolds' position may have been terminated against his wishes, plaintiffs have failed to demonstrate any facts tending to establish bad faith. Therefore, we find that reasonable minds could come to only one conclusion on the issue of breach of fiduciary duty and that that conclusion is adverse to the plaintiffs. Accordingly, we find that the trial court did not err in granting summary judgment as to the fifth count of plaintiffs' complaint.

The sixth count of plaintiffs' complaint alleges that the Code of Regulations of Wingers, Inc. provides that notice of all special meetings must specifically set forth items of business to be considered at such meetings and that items of business not so specified may not be raised. It is argued that the notice of the September 1, 1991 directors meeting was inadequate and that the defendants entertained business at that meeting which was not specifically mentioned in the notice. As a result of this alleged violation of the code of regulations, plaintiffs argue, the actions taken at the September 1, 1991 directors meeting were null and void.

The sections of the Code of Regulations of Wingers, Inc. cited by plaintiffs in support of these contentions govern meetings of shareholders, not directors. As noted, *supra*, the provisions in the code of regulations pertaining to meetings of directors contain no such notice requirement or restriction. Therefore, we find that the trial court did not err in granting summary judgment as to the sixth count of plaintiffs' complaint.

The seventh count of the plaintiffs' complaint alleges that "[a]s a direct and proximate result of the reckless, and/or negligent actions of the Defendants as aforesaid, the Defendants have caused the infliction of severe emotional distress" upon Donald Reynolds. The eleventh count of plaintiffs' complaint alleges that plaintiff Tonya Reynolds also suffered severe emotional distress as a result of the defendants' actions.

A cause of action for negligent infliction of serious emotional distress may be maintained even though no physical injury resulted. *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 4 OBR 376, 447 N.E.2d 109. However, the Ohio Supreme Court has emphasized the necessity of the element of "seriousness" in cases raising such a claim. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 78, 6 OBR 114, 119, 451 N.E.2d 759, 765. The term "serious" goes beyond a trifling mental disturbance, mere upset, or hurt feelings, as it describes an emotional injury which is both severe and debilitating. *Id.* Serious emotional distress may be established where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress generated by the circumstances of the case. *Id.* Finally, a court may decide, at the outset, whether a plaintiff has stated an actionable claim by ruling on whether the emotional distress alleged is serious as a matter of law. *Id.*

In the case *sub judice,* the trial court found that the emotional distress alleged by the plaintiffs is not extreme enough as a matter of law to sustain their claims. We agree. Plaintiffs have not alleged any emotional injuries which, in terms of seriousness, meet the test set forth in *Paugh, supra.* Therefore, we find that the trial court did not err in granting summary judgment as to the seventh and eleventh count of plaintiffs' complaint.

The eighth count of plaintiffs' complaint concerns a buy-sell agreement executed by the parties, to take effect one year from the formation of the corporation. Plaintiffs argue that the agreement's one-year time restriction was waived by the actions of defendants and that, therefore, the defendants were obligated, prior to the expiration of the first year, to honor the terms of the agreement by selling their stock to Reynolds, or by buying Reynolds' stock.

As the trial court correctly noted, the issue raised in the eighth count of plaintiffs' complaint became moot when the one-year period elapsed, on April 1, 1992. Therefore, summary judgment was correctly granted as to the eighth count.

In summary, as we find that the trial court did not err in granting summary judgment as to the first, second, third, fourth, fifth, sixth, seventh, eighth, and eleventh counts of the plaintiffs' complaint, that judgment of the Shelby County Court of Common Pleas is affirmed.

*Judgment affirmed.*

THOMAS F. BRYANT and HADLEY, JJ., concur.