This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Rocky Brillhart, appeals the decision of the Wayne County Court of Common Pleas, which granted appellee Cheryl Noah's petition for a civil protection order and denied appellant's petition for a civil protection order. This Court affirms.
 I. {¶ 2} In April 2000, appellant was arrested for an incident with his grandmother. In May of 2000, appellant began to come to appellee's home and calling her frequently to try to get her to use her influence in the community to help him. When appellee refused to assist appellant, he became upset. This conduct began in May and continued into August, at which time appellee contacted the Wayne County Sheriff's Department. On August 23, 2000, appellee received a call from appellant asking her if he could borrow her car. When appellee refused, appellant became very upset, and said he "wanted to end it all, he just wanted to end it.", Appellee could hear appellant's mother crying in the background. Appellee decided to report the incident to the sheriff. As a result of the call, appellant was arrested for disorderly conduct. After this incident, the number of harassing phone calls to appellee increased and appellant began coming to appellee's office.
 {¶ 3} In September of 2000, appellant was convicted of disorderly conduct and put on probation. In August of 2001, appellant's psychologist called appellee to warn her that appellant threatened to "smash-in" appellee's face. Between September 2000 and February 2001, appellant made approximately 15 calls a week to appellee. Appellee again contacted the sheriff's department and a recording device was placed on her telephone. Appellant was identified as the person making the calls. In October of 2001, appellant began making harassing calls to appellee's family members. Appellant stopped making harassing phone calls to appellee in November 2001 because he was incarcerated.
 {¶ 4} The Wayne County Planning Commission held a public meeting on March 13, 2002, at the county administration building in Wooster. Appellee attended the meeting. Appellant also attended the meeting. Appellant made a scene during the meeting, directing all of his comments at appellee. Lisa Johnson, assistant director of the planning department contacted the sheriff's department. When a deputy entered the meeting, appellant left.
 {¶ 5} After the meeting, appellant phoned appellee's 12-year-old granddaughter and frightened her. Appellant's conduct at the planning commission's meeting and his harassment of her family led appellee to file a petition for a civil protection order on March 20, 2002.
 {¶ 6} Appellant also filed a petition for a civil protection order on June 4, 2002.
 {¶ 7} On July 11, 2002, a full hearing was held on both appellee's and appellant's petition. The trial court ruled in favor of appellee and issued a three-year anti-stalking civil protection order. Appellant was ordered to stay 100 yards away from appellee and to have no contact with appellee. Also, appellant was prohibited from obtaining, using, or possessing a firearm. Appellant's petition was denied.
 {¶ 8} Appellant timely appealed, setting forth one assignment of error for review.
 II. ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN ISSUING A CIVIL PROTECTION ORDER AGAINST APPELLANT ROCKY BRILLHART."
 {¶ 9} In his sole assignment of error, appellant asserts that the trial court erred in issuing a protection order against him. This Court disagrees.
 {¶ 10} When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born (Aug. 21, 1996), 9th Dist. No. 95CA006286. In determining whether a conviction is against the manifest weight of the evidence, this Court must:
 "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 11} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 12} R.C. 2903.21.4 governs the filing of a "petition for a protection order." R.C. 2903.21.4(C) provides that a person may seek relief under this statute, but that the petition must include: (1) an allegation that the respondent engaged in a violation of section R.C. 2903.21.1 against the person to be protected by the protection order, including a description of the nature and extent of the violation; and, (2) a request for relief under this section. See R.C. 2903.21.4(C).
 {¶ 13} R.C. 2903.21.1 prohibits menacing by stalking. It provides as follows, "No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.21.1(A). The statute defines "pattern of conduct" as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.21.1(D)(1).
 {¶ 14} Appellant asserts that the phone calls appellant made in 2000 cannot be considered because they are not "closely related" in time to the date appellee filed her petition. In the case sub judice, appellee filed her petition for a civil protection order on March 20, 2002, after enduring almost two years of harassment from appellant. Assuming without deciding that the phone calls made in 2000 should not be considered, appellant's behavior at the planning commission meeting on March 13, 2002, and his harassment of appellee's granddaughter constitute a "pattern of conduct" as defined in R.C. 2903.21.1.
 {¶ 15} Furthermore, explicit or direct threats of physical harm are not necessary to establish a violation of R.C. 2903.21.1(A). Rather, the test is whether the offender, by engaging in a pattern of conduct, knowingly caused another to believe the offender would cause physical harm or mental distress to him or her. State v. Smith (1998),126 Ohio App.3d 193, 200. Appellant's conduct at the planning meeting and his harassment of appellee's granddaughter, coupled with the prior threats of physical violence related by appellant's psychologist, meet the requirement under R.C. 2903.21.1(A) that appellant knowingly caused appellee to believe he would cause physical harm to her person.
 {¶ 16} Mental distress is a "temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment." R.C. 2903.21.1(D)(2). This Court has held that a trier of fact may make such a determination without the aid of expert testimony: "`The jurors themselves, can refer to their own experiences in order to determine whether, and to what extent, the defendant's conduct caused the serious emotional distress.'" State v. Bilder (1994), 99 Ohio App.3d 653,665, quoting Paugh v. Hanks (1983), 6 Ohio St.3d 72, 80. Appellee's mental distress is corroborated by the fact of her changed routine and pattern of doing things, her fear of visiting friends after dark, and requesting an escort by a Wayne County Sheriff's deputy to daytime meetings. See Akron v. Andrews (Jan. 26, 2000), 9th Dist. No. 19383 (Victim lived in constant fear of defendant and testified that "he had changed his normal routines as a result of Defendant's actions. He had security lights installed around his home, cancelled a vacation so that his daughter would not be in the house alone, attempted to alter his working schedule, and asked his neighbors to keep an eye on his house.").
 {¶ 17} On the facts in this particular case, this Court concludes that the trial court did not err in finding that appellant caused appellee to suffer mental distress
 {¶ 18} Appellant also argues that his due process rights were violated. Specifically, he avers that it was error for the original trial court judge to deny his petition for an ex parte protective order given the fact that the judge recused himself from the proceedings. This argument is without merit. Assuming without deciding that it was error for the original trial court judge to deny appellant's petition for an ex parte protective order, the error is harmless. Appellant had the opportunity to present his case before the visiting judge who conducted a full hearing on both appellee's and appellant's petition.
 {¶ 19} Appellant also argues that the trial court denied him his due process rights by denying his request for a continuance. "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge." State v. Unger (1981),67 Ohio St.2d 65, 67. An appellate court must not reverse the denial of a continuance absent an abuse of discretion. Id. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 20} In evaluating a motion for continuance, a court should consider the following:
 "[T]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." Unger 67 Ohio St.2d at 67-68.
 {¶ 21} Appellant's reason for seeking a continuance was to retain counsel or have counsel appointed for him and for the purpose of undergoing a medical procedure for the removal of a cyst from his neck. The original hearing date scheduled for March 26, 2002, was continued by the agreement of the parties until May 10, 2002. The court notified appellant that due to the fact that this is a civil matter, counsel would not be appointed. Given the fact that appellant received this notice nearly a month before the hearing, the trial court denied appellant's request for a continuance. In addition, appellant failed to present the trial court with documentation showing that the medical procedure was needed immediately. After reviewing the record, this Court cannot say that the trial court abused in denying appellant's request for a continuance.
 {¶ 22} Finally, appellant alleges that his due process rights were violated because he was not afforded a "meaningful opportunity to present his side of the story" at the August 7, 2002 hearing. A review of the transcript reveals that appellant had more than an ample opportunity to present his case. Rather than present his case, appellant chose to be disruptive and disrespectful to the court. Consequently, appellant's argument that his due process rights were violated is not well-taken.
 III. {¶ 23} Given the above, this Court cannot conclude that the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Appellant's sole assignment of error is overruled. The decision of the Wayne County Court of Common Pleas is affirmed.
BAIRD, P.J. and BATCHELDER, J., CONCUR.