[Cite as *In re B.A.H.*, 2011-Ohio-4157.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: B. A. H.


STEPHANIE M. HAYTHE

     Applicant


Case No. V2010-50345

Commissioners:
Susan G. Sheridan, Presiding
E. Joel Wesp

OPINION OF A TWO
COMMISSIONER PANEL

{¶1}The appeal presently before this panel involves injuries sustained by B.A.H. as the result of falling from a tree. After thoughtful consideration, this panel has determined that B.A.H. was a victim of criminally injurious conduct. Accordingly, this panel reverses the Attorney General's denial of the applicant's claim.

*I. Procedural History*

{¶2}On July 22, 2009, the applicant, Stephanie Haythe, filed a compensation application as the result of injuries sustained by her minor child who fell from a tree while he was trying to remove toilet paper that had been placed by vandals. On September 22, 2009, the Attorney General issued a finding of fact and decision denying the applicant's claim due to the fact that economic loss had not been incurred.

{¶3}On November 5, 2009, the applicant filed a supplemental compensation application. On December 18, 2009, the Attorney General issued a finding of fact and decision on the basis of the supplemental compensation application. The Attorney General determined the applicant was not eligible to receive an award of reparations since B.A.H. did not qualify as a victim of criminally injurious conduct. The Attorney General reasoned that B.A.H.'s injuries were caused from falling from the tree, not by

any conduct that is punishable by fine, imprisonment, or the death penalty as is required by R.C. 2743.51(C)(1).

{¶4}On January 15, 2010, the applicant submitted a request for reconsideration. On March 16, 2010, the Attorney General rendered a Final Decision finding no reason to modify its initial decision. On April 13, 2010, the applicant filed a notice of appeal from the March 16, 2010 Final Decision of the Attorney General. The appeal was heard by commissioners Sheridan, Kerschner, and Ostry on January 5, 2011 at 11:35 A.M.

## II. Applicant's Position

{¶5}On January 5, 2011, Stephanie Haythe, her son, B.A.H., her attorney, Kimberley Wells, and Assistant Attorney General Matthew Karam, representing the state of Ohio, attended the hearing and presented testimony and oral argument for the panel's consideration.

{¶6}The applicant asserts that the incident involving B.A.H. falling from the tree was not an isolated incident; she contends that it was related to a pattern of conduct involving bullying, harassment, and threats both to her son and to her property. Furthermore, she contends that this is not simply a property crime, but, in fact, criminally injurious conduct which should qualify the applicant to receive an award of reparations.

## III. Attorney General's Position

{¶7}Conversely, the Attorney General asserts that criminal damaging does not qualify as criminally injurious conduct. Furthermore, the Attorney General asserts that the injuries did not result from criminal damaging because the injuries were not the natural or probable consequence of the property crime itself.

## IV. Witness Testimony and Argument

{¶8}B.A.H. was called to the witness stand to testify. B.A.H. related that the harassment began during his freshman year at high school in 2008, in approximately November or December of that year. B.A.H. stated his problems commenced when he enrolled into Future Farmers of America (F.F.A.). He related that he was viewed as an outsider since he had no farming backgrounds and the other members of his class had extensive farming experience. He disclosed that when he selected a project for the class, the raising of a dairy calf, threats were made against the calf to the point where his calf had to be relocated to another location for its protection. B.A.H. chronicled a pattern of harassing events, i.e., slamming of the classroom door in his face, the mocking of his name and initials, being followed in the hallways at school, harassing telephone calls, and feeling like an outsider. Not only did this conduct occur inside the school, but also around the school campus. He stated a group of classmates expressed their hatred for him, and he felt threatened since they followed and stared at him.

{¶9}B.A.H. disclosed that he communicated his fears to his parents, school administrators, his F.F.A. teacher, school counselors, and a deputy sheriff. In March 2009, his mother discovered a slaughtered animal in their mailbox. Later, B.A.H. learned that the group of students who had been bullying him had placed the animal in their mailbox. Finally, B.A.H. detailed the events surrounding the incident of March 14, 2009, which resulted in his injuries. It was first noticed that his family's cars had been covered in toilet paper and, after they were cleaned B.A.H. left for a martial arts class. While at the class B.A.H. received a phone call from a friend that his house had been "hit." He and his parents returned to their home to assess the damage; he did not want other classmates to see what had been done for fear of further retribution. He felt angry and hurt, but knew he had to clean up the mess.

{¶10}Accordingly, he pulled as much toilet paper from the tree as he could reach. Being unable to remove all the toilet paper from the tree, he then used a ladder. Initially, he fell from the ladder, but he continued his efforts to remove the toilet paper

from the tree. However, he had to discontinue this endeavor due to a severe headache. He had sustained brain trauma as the result of the fall. Police were called because the vandals had "keyed" his parents' cars.

{¶11}B.A.H. related he sought treatment at Children's Hospital. The individuals involved were prosecuted for criminal damaging. While other houses in the area were vandalized, it was B.A.H.'s opinion that his home had received more damage.

{¶12}Upon cross-examination, B.A.H. stated that these individuals did not verbalize their threats but conveyed their feeling of dislike through acts such as staring at him or following him.

{¶13}B.A.H. related that the fall occurred because the ladder was placed on uneven ground and he fell when he attempted to climb it. B.A.H. conceded that a dead animal was found in another mailbox and other classmates' houses were also vandalized on March 14, 2009.

{¶14}Upon questioning by panel commissioners, B.A.H. stated he was never pushed, shoved, or struck by any of the members of the group, only occasionally brushing shoulders with them in the hallway of the school. B.A.H. contended that, as a result of his injury, he has trouble concentrating and his grades have fallen. Whereupon, the testimony of B.A.H. was concluded.

{¶15}The applicant, Stephanie Haythe, was called to testify. Ms. Haythe related her experiences with problems her son was experiencing at school, which resulted in the relocation of his F.F.A. project to another farm in the area. Subsequently, a series of telephone calls prompted her to confront B.A.H. about any problems he was encountering at school. B.A.H. informed her concerning the bullying he was tolerating. Accordingly, Ms. Haythe contacted her telephone provider, the sheriff's department, and school administrators. The applicant stated she observed her son leave school and

head toward the parking lot when she saw a group of students follow him.   She confronted these students and told them to leave her son alone.

{¶16}The applicant stated B.A.H. suffered traumatic brain injury as the result of the fall, and that it culminated in concentration and short term memory problems, lower grades, and social ostracism.   Applicant introduced Applicant's Exhibit 1, copies of miscellaneous medical documentation which provide evidence as to the injuries B.A.H. suffered as a result of the fall from the ladder.   The Attorney General stipulated that the records reflect a causal connection between the fall of March 14, 2009 and the injuries sustained.   The applicant also testified that B.A.H. saw a psychologist as a result of this injury and the bullying he experienced.

{¶17}The applicant explained her active role in the criminal prosecution of the offenders.   She also had urged the judge to grant a protection order.   However, she believes the protection order was not effective since the offenders still attend school with her son.   She directed B.A.H. to drop the F.F.A. class since she felt the bullying would continue if he did not.   Currently, B.A.H. continues to suffer academically, even with the assistance of tutors.   Applicant's Exhibit 2, a progress report concerning B.A.H.'s grades, was submitted.   The applicant read from documents of B.A.H.'s grades prior to and subsequent to the incident.   The documents reflect that before the incident his grades were predominately A's and B's while after the incident he predominately scored C's and D's.

{¶18}Upon cross-examination, the applicant admitted that she took no preemptive actions against the bullies due to a lack of knowledge as to what to do. The applicant related that she did not see her son fall.   Whereupon, the testimony of Stephanie Haythe was concluded.

{¶19}In closing, the applicant asserts that B.A.H. was a victim of menacing as defined in R.C. 2903.22.   The series of acts involving death threats made concerning the calf, telephone harassment, being followed around at school, having doors slammed in his face, and being made fun of because of his name, caused B.A.H. to suffer mental

distress and humiliation.   This conduct constitutes menacing by stalking.   Furthermore, the court granted B.A.H. a protection order, certainly evidence that he was a victim of menacing.

{¶20}The applicant pointed out that this court has found property crimes sufficient to constitute criminally injurious conduct i.e., *In re Coss*, V91-83524tc (9-22-93); and *In re Martin*, V2007-90145tc (7-5-07), 2007-Ohio-4510.   Therefore, she asserts that the pattern of unlawful conduct B.A.H. suffered meets the definition of criminally injurious conduct contained in R.C. 2743.51(C)(1).   Additionally, evidence presented by a psychologist demonstrates that B.A.H. suffered mental distress as the result of this pattern of conduct.

{¶21}The applicant further argued that but for the offenders placing the toilet paper in the tree, B.A.H. would not have fallen.   It also was foreseeable that B.A.H. would have sustained injury in that, based upon the pattern of harassment B.A.H. felt compelled to remove the toilet paper from the tree.

{¶22}In closing argument, the Attorney General related that B.A.H. has suffered as the result of this unfortunate incident.   The offenders in this case were convicted of criminal damaging in the second degree, an offense that does not require that the damaging caused the risk of physical harm.   The Attorney General asserts that the conduct which B.A.H. experienced does not constitute menacing.   However, even if menacing is found, there is no causal connection between the menacing and B.A.H.'s fall from the tree.   Furthermore, the injuries were caused by B.A.H.'s own negligence in climbing the tree.

{¶23}Based upon questioning by a panel of commissioners, the Attorney General conceded based on the totality of events that menacing did occur. Accordingly, based on the testimony of B.A.H. and the applicant, B.A.H. reasonably believed that there was a substantial threat of personal injury and consequently B.A.H. was a victim of criminally injurious conduct.   However, the medical and psychological expenses incurred were not the result of menacing.

*V. Controlling Law and Precedent*

{¶24}R.C. 2743.51(C)(1) in pertinent part states:

"(C) 'Criminally injurious conduct' means one of the following:

"(1) For the purposes of any person described in division (A)(1) of this section, any conduct that occurs or is attempted in this state; poses a substantial threat of personal injury or death; and is punishable by fine, imprisonment, or death. . ."

{¶25}R.C. 2903.211(A)(1) (Menacing by stalking) states:

"(A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."

{¶26}R.C. 2903.22(A) (Menacing) states:

"(A) No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."

R.C. 2909.06(A)&(B) (Criminal damaging or endangering) in pertinent part states:

"(A) No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent:

"(B) Whoever violates this section is guilty of criminal damaging or endangering, a misdemeanor of the second degree. If a violation of this section creates a risk of physical harm to any person, criminal damaging or endangering is a misdemeanor of the first degree."

{¶27}On April 6, 2011, the court issued a notice informing the parties that Commissioner Randi M. Ostry recused herself pursuant to Rule 1.12(b) of the Rules of Professional Conduct.  The parties were given the choice of rehearing the matter or allowing the selection of a randomly chosen commissioners to review the case file and hearing and reaching a decision with the two sitting commissioners.

{¶28}On May 5, 2011, the Attorney General filed a notice opting to have a randomly selected third commissioner to review and make a Final Decision in this case, in conjunction with the two sitting commissioners.  On May 13, 2011, the applicant submitted a letter selecting the same option as the Attorney General.  E. Joel Wesp was randomly selected as the third commissioner.

{¶29}The applicant must prove criminally injurious conduct by a preponderance of the evidence.  *In re Rios* (1983), 8 Ohio Misc. 2d 4.  When crimes against property create an unbroken chain of events culminating in an injury to persons those persons are victims of criminally injurious conduct.  *In re Coss*, V91-83524tc (9-22-93).  An applicant who was injured by removal of a manhole cover in violation of R.C. 2909.07 (criminal mischief) R.C. 2913.02 (theft), and R.C. 4511.17 (tampering with manhole covers) was a victim of criminally injurious conduct.  *In re Martin*, V2007-90145tc (7-5-07), 2007-Ohio-4510.

{¶30}Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

{¶31}Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a cause.  The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."

{¶32}The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact.  *State v. DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus.  The court is free to believe or disbelieve, all or any part of each witness's testimony.  *State v. Antill* (1964), 176 Ohio St. 61, 26 O.O. 2d 366, 197 N.E. 2d 548.

{¶33}The proximate cause of an injury is the primary or moving cause, or that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the accident could not have happened, if the injury be one which might be reasonably anticipated or foreseen as a natural consequence of the wrongful act. An injury or damage is proximately caused by an act, or a failure to act, whenever it appears from the evidence in the case, that the act or omission played a substantial part in bringing about or actually causing the injury or damage; and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission. "The last negligent act contributory to an injury, without which such injury would not have resulted." Black's Law Dictionary Sixth Edition (1990).

{¶34} "'Cause' has been defined as 'the sum total of the contingencies of every description which, being realized, the event invariably follows." *Burns v. Eminger* (1929), 87 Mont. 397, 408, 276 P. 437, 442. Some predictability, whether based upon scientific knowledge or a common-sense appraisal of human behavior, must be an ingredient of causation; hence, foreseeability is an inherent element of causation. *In re Ewing*, V84-39931jud (5-4-87), 33 Ohio Misc. 2d 48.

{¶35}Merriam-Webster's Dictionary of Law (1996) defines foreseeable as: "such as reasonably can or should be anticipated: such that a person of ordinary prudence would expect to occur or exist under the circumstances."

*VI. Panel's Determination*

{¶36}This case poses two inter related issues. First, whether B.A.H. was a victim of criminally injurious conduct, and second, whether the criminally injurious conduct was causally related to the injuries he sustained from the fall from the tree. We answer each question in the affirmative. Based upon the history and pattern of events starting in November 2008 and culminating with the fall from the tree on March 13, 2009, B.A.H. was a victim of menacing and menacing by stalking. While we agree

that criminal damaging also occurred, B.A.H. suffered as the result of threats made on the life to his F.F.A. calf project, he endured a stream of harassing telephone calls, intimidating looks and actions by a group of fellow students, a slaughtered animal placed in  his mailbox, and was bullied on and off school property.  The court in *In re Clapacs* (1989), 58 Ohio Misc. 2d 1 and in *In re Fife* (1989), 59 Ohio Misc. 2d 1 recognized that, as determined on a case-by-case basis, a psychological injury may be considered a personal injury to satisfy the requirement contained in R.C. 2743.51(C)(1). In the case at bar, we find B.A.H. was under a mental disability caused by continually being a victim of menacing and menacing by stalking at the time the tree was toilet papered at his residence.   But for this psychological torment caused by his victimization, B.A.H. would not have reacted with such urgency when he became aware of the toilet paper incident.  His overwhelming obsession to remove the toilet paper from the tree to prevent further humiliation and embarrassment from any classmates observing his plight, caused his lack of caution where he hastily placed the ladder against the tree, ultimately causing his injury.

{¶37}This court has previously held in the case of *In re Coss* that when crimes against property create an unbroken chain of events which culminate in injury to a person, that person is a victim of criminally injurious conduct.  In *Coss*, the applicant, an arson investigator, was responding to the scene of a fire when he stepped into a hole and sustained injury.  A panel of commissioners determined that arson is criminally injurious conduct and the applicant sustained his injury after having been dispatched to the scene of the fire.  Because of this unbroken chain of events Coss qualified as a victim of criminally injurious conduct.

{¶38}The case at bar presents a much more compelling example of the causal connection between a crime and an injury.  B.A.H. was a victim of continuing menacing and menacing by stalking which motivated him to climb the tree and resulted in his injury.

{¶39}Finally, the medical documentation presented at the hearing proves that B.A.H. suffered personal injury as a result of falling from the tree.   Accordingly, we find the applicant has established by a preponderance of the evidence that B.A.H. was a victim of criminally injurious conduct and he should be compensated for his injuries.

{¶40}Therefore, the Attorney General's March 16, 2010 Final Decision is reversed.

_____
SUSAN G. SHERIDAN
Presiding Commissioner


_____
E. JOEL WESP
Commissioner

**Karl C. Kerschner, Commissioner, Dissenting Opinion:**

{¶41}I respectfully dissent.   Based upon the evidence contained in the case file and presented at the hearing, the injuries B.A.H. sustained as the result of his fall from the tree were not the result of criminally injurious conduct.

{¶42}While the majority finds an unbroken chain of criminal events led to the injuries sustained by B.A.H. as the result of his falling from the tree, the record does not support this conclusion.   B.A.H.'s trouble with his fellow students started, by his own admission, in November or December 2008.   While enrolled in a F.F.A. class, his project (a calf) was threatened, resulting in it having to be relocated for its well being. Throughout the remainder of the school year he experienced unwelcome stares, ostracization, and disparaging verbal remarks made both in person and over the telephone.   However, based upon questioning by the commissioners, B.A.H. conceded he was never threatened with physical injury and the only physical contact was occasional shoulder brushes in the hallway.   While the Attorney General conceded that this conduct, in conjunction with a dead animal placed in B.A.H.'s residential mailbox, constituted criminally injurious conduct, the record again does not support this conclusion.

{¶43}It is certainly unpleasant to be excluded and isolated from one's classmates; even name calling and insulting humor should have no place in the classroom or the hallways; however, such conduct is not criminal in nature.   The daily drama of high school relationships may be emotionally draining and provide an unwarranted distraction from the goals of an institution dedicated to learning.   However, it does not equate to the criminal activity defined under R.C. 2903.211(A)(1), menacing by stalking, or R.C. 2903.22(A), menacing.

{¶44}There can be no question with respect to the incident of March 14, 2009, however, that criminal activity occurred.   The Clark County Sheriff's Incident Report lists the following alleged criminal violations: R.C. 2909.07(A)(1), criminal mischief; R.C. 2913.02, theft; 2923.03(A)(4), complicity; and R.C. 2909.06(A)(1), criminal damaging or

endangering.   After full review of the charges by the investigative authority and careful review by the juvenile court prosecutor, each of the five juvenile offenders was found delinquent for engaging in complicity, criminal damaging or endangering, or criminal mischief.   All of the delinquents were ordered to pay B.A.H. in equal amounts of $325.12.   It should be noted that the criminal incident was a crime against property and that the applicant was not physically present when the event occurred.

{¶45}While the majority asserts an unbroken chain of events, which they characterized as menacing and menacing by stalking, started with the confrontations at the school in November and December 2008 and culminated with the March 14, 2009 property damage incident, there is no clear cut strand linking these events together. Furthermore, the degree of emotional distress encountered by B.A.H. does not rise to the level of personal injury as contemplated by R.C. 2743.51(C)(1).   However, if for argument's sake, it was conceded that B.A.H. was a victim of criminally injurious conduct based on the events leading up to the property damage incident of March 14, 2009, there is still no causal link between B.A.H.'s injuries and the acts of vandalism which were committed.

{¶46}The juvenile offenders who placed toilet paper in the trees surrounding B.A.H.'s home  did not pose a substantial threat of personal injury or death, as is required pursuant to R.C. 2743.51(C)(1).   Furthermore, this act of vandalism or criminal damaging was not the proximate cause of the injuries B.A.H. sustained.   B.A.H. was injured well after the event at issue when he placed a ladder on uneven ground covered with underbrush and subsequently fell.   B.A.H.'s own actions, temporally removed from the vandalism incident, were the cause of his injury.

{¶47}The majority relies on the holding in *In re Coss* to support their position. However, it should be noted that *Coss* was a two-to-one panel decision.   The dissent refused to agree with the majority since Coss was not injured as the result of direct contact with the arson fire.   Consequently, the dissent opined that the majority stretched the parameters of the reparations fund to become "a form of hazard

insurance." Moreover, Coss was injured by an obscured hazard, stepping off the fire truck and into a hole, whereas B.A.H. had the ability to assess his situation and voluntarily choose a course of action to remedy it at a point in time which, again, occurred well after the vandalism.

{¶48}Judicial decisions in *In re May*, V94-43540tc (2-29-96) affirmed jud (5-10-96) and *In re Kallay* (1997), 91 Ohio Misc. 3d 148, found that police officers who either slipped and fell while trying to execute a search warrant or stepped into a hole while attempting to serve a warrant for felony rape, respectively, were not victims of criminally injurious conduct. These decisions properly interpret the law and should be relied on rather than the holding in *Coss.*

{¶49}In sum, B.A.H. has not proven by a preponderance of the evidence that he was a victim of criminally injurious conduct. Additionally, the act of toilet papering a tree does not constitute conduct which posed a "substantial threat of personal injury or death." Finally, B.A.H.'s injuries were proximately caused by his own careless attempts to remove the toilet paper from the tree. Accordingly, the Final Decision of the Attorney General should be affirmed.

_____
KARL C. KERSCHNER
Commissioner



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: B. A. H.

STEPHANIE M. HAYTHE

      Applicant

Case No. V2010-50345

Commissioners:
Susan G. Sheridan, Presiding
Randi M. Ostry

ORDER OF A TWO
COMMISSIONER PANEL

IT IS THEREFORE ORDERED THAT

{¶50}1)   Applicant's Exhibits 1 and 2 are admitted into evidence;

{¶51}2)   The March 16, 2010 decision of the Attorney General is REVERSED and judgment is rendered in favor of the applicant;

{¶52}3)   This claim is remanded to the Attorney General for total economic loss calculation and decision;

{¶53}4)   This order is entered without prejudice to the applicant's right to file a supplemental compensation application, within five years of this order, pursuant to R.C. 2743.68;

{¶54}5)   Costs are assumed by the court of claims victims of crime fund.

_____
SUSAN G. SHERIDAN
Presiding Commissioner


_____
E. JOEL WESP
Commissioner


ID #I:\VICTIMS\2010\50345\3-14-11 panel decision.wpd\DRB-tad
        A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Clark County Prosecuting Attorney and to:


Filed 7-13-11
Jr. Vol. 2279, Pgs. 100-101
Sent to S.C. Reporter 8-19-11