IN RE CLAPACS.

(No. V88-41344—Decided
September 5, 1989.)

Court of Claims, Victims of
Crime Division.

*George Mineff, Jr.,* for the claimant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Jetta Mencer,* for the state.

LEACH, J. On May 11, 1988, the applicant, Bryan Clapacs, filed a reparations application to recoup his lost wages for one day. On October 7, 1988, the single commissioner issued an opinion and order wherein he found the applicant qualified as a "victim" and granted an award of reparations in the amount of $22.67, representing the unreimbursed "work loss."

The Attorney General filed an objection to said decision and, therefore, the panel of commissioners considered the claim. On April 25, 1989, the panel issued an opinion and order, with one dissent, which reversed the single commissioner's decision. The panel relied on the holdings of *In re Tucker* (Dec. 7, 1984), Court of Claims No. V83-56530jud, unreported, and *In re Davenport* (Oct. 28, 1988), Court of Claims No. V86-52241tc, unreported, to find that the applicant in the instant claim does not qualify as a victim in his own right. The panel noted that the Attorney General did not dispute the claim of Donald Clapacs (claim No. V88-41361), who attempted to apprehend the offender and sustained minor injuries.

1

On May 10, 1989, the applicant filed a notice of appeal from the panel's decision contending that he was a victim under the circumstances and should receive compensation for said work loss. The matter has been heard and scrutinized by the court and is now ready for a determination.

The record reveals that in the early morning hours of May 12, 1987, an intruder had entered the Clapacs home and eventually found his way into the applicant's sister's bedroom. The offender dragged the young woman from her room and into the hallway; she screamed and began to wrestle with the offender in an attempt to escape. The applicant's father, Donald Clapacs, heard the commotion and thus appeared and confronted the offender. The offender quickly exited the house, with Donald Clapacs in pursuit, and was successful in avoiding being captured at that time. In addition to the aforesaid assault, it was later discovered that the applicant's mother's purse was stolen. The applicant, also awakened during the incident, learned of the intruder's actions and subsequently experienced much tension, fear and anxiety. The applicant's anxiety reaction to the criminal occurrence caused him to miss one day of work.

It is clear that the issue at bar revolves around the court's interpretation of the statutory definition of the term "victim."

R.C. 2743.51(L) defines a "victim" as:

" 'Victim' means a person who suffers *personal injury* or death as a result of any of the following:

"(1) Criminally injurious conduct;

"(2) The good faith effort of any person to prevent criminally injurious conduct;

"(3) The good faith effort of any person to apprehend a person suspected of engaging in criminally injurious conduct." (Emphasis added.)

The Attorney General asserts that the panel majority was correct in its analysis of the definition of "victim," utilizing the holding of *Tucker, supra,* to preclude the applicant from entitlement to an award. On page three of the Attorney General's brief, the Attorney General states the following:

"The criminally injurious conduct in the instant claim was the burglary of the appellant's residence and the threats to his sister. The appellant was asleep when the criminally injurious conduct occurred. Since he was not confronted by the intruder, the 'criminally injurious conduct' did not pose a substantial threat of personal injury to the appellant. Thus, the requirements of the statute have not been met, and the appellant cannot be deemed a victim entitled to compensation under the Crime Victims Compensation Act."

In *Tucker,* the applicant's minor daughter was asleep in her bedroom when a crime was committed in another room in the applicant's home. The child experienced psychological problems when she learned of the incident and therefore sought professional counseling. The court found that the child did not suffer a compensable loss as a result of the incident. It is evident that the decision was based on the court's interpretation of the phrase "personal injury." The court did not view the child's psychological problems as a personal injury and thus denied the claim.

In *Davenport, supra,* the applicant suffered psychological trauma due to sexual acts committed upon his daughter and incurred economic loss as a result thereof. The panel ruled that such psychological trauma did not constitute a personal injury and denied the claims based on the court's interpretation in *Tucker.*

The various branches of this court have obviously struggled with the issue at bar. It appears that the Attorney

General is also uncertain what direction to follow concerning this issue. On page four of the Attorney General's brief, he states that "[t]he Attorney General does *not* disagree that *emotional distress, without a contemporaneous physical injury,* can constitute personal injury under the Crime Victims Compensation Act" (emphasis added), citing *In re Christie* (Oct. 30, 1985), Court of Claims No. V84-43091tc, unreported. However, the Attorney General then attempts to draw the court's attention from *Christie* by asserting that *Tucker* is dispositive of the present issue and must be followed.

In *Christie*, the panel utilized the Supreme Court of Ohio's logic and holding in *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131, 4 OBR 376, 447 N.E. 2d 109, to reject the notion that "personal injury" refers only to "physical injury." The panel stated as follows:

"In essence, the single commissioner's determination is based on his interpretation of the statutory definition of 'victim.' R.C. 2743.51(L) defines a victim as 'a person who suffers *personal injury* or death,' which results from, as in this case, criminally injurious conduct. The single commissioner concluded that the child did not suffer any personal injury and, therefore, was not a victim.

"The single commissioner suggests, therefore, that the phrase 'personal injury' refers only to *physical* injury. A majority of this panel disagrees with such an interpretation and finds that the logic expressed in the recent Ohio Supreme Court case of *Schultz* v. *Barberton Glass Co.*, 4 Ohio St. 3d 131 (1983) is applicable.

"In *Schultz,* the court was faced with the issue of whether a cause of action existed for the negligent infliction of serious emotional distress without a contemporaneous physical injury. Upon review of the facts and decisions from numerous other jurisdictions per-taining to the issue, the court held that a contemporaneous physical injury is unnecessary. The court stated that an 'emotional injury can be as severe and debilitating as physical harm and is deserving of redress.' (cite omitted) *Id.* at 135.

"In adopting the reasoning enunciated in *Schultz,* a majority of this panel finds that emotional distress, experienced as a result of criminal activity, constitutes a personal injury. Therefore, we interpret the phrase 'personal injury' to mean psychological injury as well as physical harm." (Emphasis *sic.*) *In re Christie, supra,* at 2-3. See, also *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72, 6 OBR 114, 451 N.E. 2d 759 (where the court extended the cause of action to accident observers who are not directly involved).

It is interesting to note that the Attorney General did not appeal the decision rendered in *Christie.* Such inaction is difficult to comprehend since *Christie* was decided subsequent to *Tucker.*

The court has considered the aforementioned cases and is of the opinion that the panel's decision in *Christie* is an equitable and logical approach to this issue. The court finds that the interests of justice demand that a case-by-case analysis be utilized to ascertain the impact a criminal incident may have upon a person other than the individual directly involved in the crime. The factors to be considered are analogous to those enunciated in *Paugh, supra,* and shall consist of the person's proximity to the location of the crime, the relationship between him and the victim (the person assaulted), and the shock directly attributable to the sensory and contemporaneous observance of the incident. It should be noted that the *Paugh* court stated "that it is not necessary for a plaintiff to actually see the accident." *Id.* at 79, 6 OBR at 120, 451 N.E. 2d at 766. Therefore, the court agrees that

**4**

emotional distress and anxiety due to a direct awareness of a criminal incident must also be classified as "personal injury." In this regard, a person shall be considered a "victim" of criminally injurious conduct, pursuant to R.C. 2743.51(L), if he experiences psychological injury and/or physical harm. Accordingly, the court hereby adopts the holding enunciated in *Christie.*

In reviewing claims appealed to the court, the court is guided by R.C. 2743.61(A), which reads, in pertinent part, as follows:

"* * * If upon hearing and consideration of the record and evidence, the court decides that the decision of the commissioners appealed from is reasonable and lawful, it shall affirm the same, but if the court decides that the decision of the commissioners is unreasonable or unlawful, the court shall reverse and vacate the decision or modify it and enter judgment thereon."

Upon review of the record in the instant claim, the court finds that the decision of the panel majority is unreasonable and thus must be cast aside in order to provide a method for recompense of allowable expenses due to psychological harm directly incurred from criminal activity. Therefore, the court finds that the applicant's contentions are well-taken and further finds that he meets the statutory requirements to be granted an award of reparations.

Accordingly, the panel's April 25, 1989 decision is reversed. This court adopts the single commissioner's findings of economic loss and thus grants the applicant an award of reparations in the amount of $22.67, consisting entirely of unreimbursed "work loss."

*Judgment accordingly.*

RUSSELL LEACH, J., retired, of the Franklin County Municipal Court, sitting by assignment.