

IN RE FIFE.

(Nos. V86-47213 and
V86-55801—Decided
October 13, 1989.)

Court of Claims,
Victims of Crime Division.

*James A. Fredericka,* for the claimants.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Thomas J. Gallagher,* for the state.

LEACH, J. On September 10, 1986, Isaac and Miriam Fife filed an application for an award of reparations concerning the brutal assault of their son, Raymond C. Fife. The single commissioner granted the applicants an award of reparations in the amount of $1,375.38, consisting of $1,250 for "funeral expense" and $125.38 for "allowable expense." The allowable expense award is reimbursement for economic loss incurred by Isaac Fife since he did not work for two days while his son was in the hospital. The applicant (herein "applicant" shall only refer to Mr. Fife) was also seeking an award for additional time lost from work due to his presence at the trials of the offenders and the psychological stress he experienced following his son's death. The single commissioner opined that such loss was reasonable and compensable. The claim was referred to the Attorney General for investigation regarding the applicant's economic loss in this regard. The Attorney General filed an objection and notice of appeal of said decision pertaining to the sole issue of applicant's economic loss that was the subject of the single commissioner's referral back to the Attorney General.

On May 23, 1989, the panel of com-

1

2

missioners issued an opinion and order which affirmed the award granted, but reversed the single commissioner's decision concerning the applicant's additional allowable expense claim. On June 22, 1989, the applicant timely filed a notice of appeal from the panel's decision. The matter was heard by this court on September 1, 1989, and, having duly considered the sole issue involved, the court renders the following decision.

Applicant's twelve-year-old son was brutally assaulted, sodomized, mutilated and burned by his attackers on September 10, 1985. He was rendered unconscious and left to die in a field near his home. The applicant discovered his son and quickly obtained medical assistance. Raymond Fife never regained consciousness and died two days after the assault. The applicant experienced severe emotional trauma due to the crime and its outcome and was unable to work for a short time following his son's death. In addition, the applicant did not work due to his attendance at the offenders' trials.

The issue in this matter is whether the applicant is a "victim" within the applicable statutory definition and thus eligible to receive an award of reparations for economic loss he incurred during his absence from work.

R.C. 2743.51(L) defines a "victim" as:

"* * * a person who suffers personal injury or death *as a result* of any of the following:

"(1) Criminally injurious conduct[.]" (Emphasis added.)

The panel, while conceding that the applicant suffered personal injury (*i.e.,* psychological trauma, distress), stated in its opinion that such injury was not the "direct object of a crime (part of the *corpus delicti*)" and thus was not a result of criminally injurious conduct. *In re Fife* (May 23, 1989),

Court of Claims No. V86-47213tc, unreported, at 10. The panel opined that the infliction of emotional distress or injury does not constitute a crime. Therefore, even though the applicant suffered his emotional upheaval as a result of the criminal incident, he was not *directly* involved — there was no crime perpetrated against the applicant.

The panel decision in *Fife* approached the issue at bar in a different manner than the decisions rendered in *In re Tucker* (Dec. 7, 1984), Court of Claims No. V83-56530jud, unreported, and *In re Davenport* (Oct. 28, 1988), Court of Claims No. V86-52241tc, unreported. In *Tucker* and *Davenport* the respective branches of this court concentrated on the interpretation of the phrase "personal injury," holding that psychological problems of one who was not physically injured by the criminal event did not constitute a personal injury and, thus, the applicants' claims were denied.

The court recently reversed such legal thinking in the decision of *In re Clapacs* (1989), 58 Ohio Misc. 2d 1, 3-4, 567 N.E. 2d 1351, 1354, wherein it held the following:

"The court has considered the aforementioned cases [*Tucker* and *Davenport, supra*] and is of the opinion that the panel's decision in [*In re*] *Christie* [(Oct. 30, 1985), Court of Claims No. V84-43091tc, unreported] is an equitable and logical approach to this issue. The court finds that the interests of justice demand that a case-by-case analysis be utilized to ascertain the impact a criminal incident may have upon a person other than the individual directly involved in the crime. The factors to be considered are analogous to those enunciated in *Paugh* [v. *Hanks* (1983), 6 Ohio St. 3d 72, 6 OBR 114, 451 N.E. 2d 759], *supra,* and shall consist of the person's proximity to the location of the crime,

the relationship between him and the victim (the person assaulted), and the shock directly attributable to the sensory and contemporaneous observance of the incident. It should be noted that the *Paugh* court stated 'that it is not necessary for a plaintiff to actually see the accident.' *Id.* at 79, 6 OBR at 120, 451 N.E. 2d at 766. Therefore, the court agrees that emotional distress and anxiety due to a direct awareness of a criminal incident must also be classified as 'personal injury.' In this regard, a person shall be considered a 'victim' of criminally injurious conduct, pursuant to R.C. 2743.51(L), if he experiences psychological injury and/or physical harm. * * *"

In reviewing claims appealed to the court, the court is guided by R.C. 2743.61(A), which reads, in pertinent part, as follows:

"* * * If upon hearing and consideration of the record and evidence, the court decides that the decision of the commissioners appealed from is reasonable and lawful, it shall affirm the same, but if the court decides that the decision of the commissioners is unreasonable or unlawful, the court shall reverse and vacate the decision or modify it and enter judgment thereon."

Upon review of the record in the instant claim, the court finds that the panel's decision is unlawful and unreasonable. The court has now stated that, as determined on a case-by-case basis, a psychological injury and the ramifications thereof may be considered a "personal injury" within the meaning of R.C. 2743.51(L). *Clapacs, supra.* In addition, the court finds that the panel's aforementioned interpretation of R.C. 2743.51(L)(1), in which it distinguishes between direct and indirect "victims" of criminally injurious conduct, is contrary to the plain language of the statute. The statute provides that a victim is a person who

"suffers personal injury * * * as a *result of* * * * [c]riminally injurious conduct" (emphasis added). R.C. 2743.51(L)(1). In this specific claim it is clear that the applicant's economic loss was a result of a crime, although he was not physically assaulted.

In view of the above finding, this court must analyze the nature of an applicant's alleged injury and its relationship to the criminal incident. This analysis may require psychiatric and medical evidence to prove one's claim. The court does not envision the branches of this court embracing a "but for" test in determining the meaning of the word "result" as used in R.C. 2743.51(L). The court does not view this case or *Clapacs, supra,* as an opening of the floodgates for fraudulent claims or claims based upon imagined injury. To receive compensation an applicant is required to prove the relationship of an injury to the criminal event by a preponderance of the evidence. It is contemplated that "personal injury" as compensated herein shall require a showing of more than mere sorrow, concern, or mental distress. Psychological injury must be of such a debilitating nature as to impede or prohibit the resumption or enjoyment of day-to-day activities. There can be no dispute that the circumstances at bar present this very scenario.

In view of the above, the court finds the applicant's appeal is well-taken and thus the panel's May 23, 1989 decision is reversed. The court agrees with the single commissioner's decision that the applicant's "work loss" following his son's death and during the trials of the offenders is compensable. However, this compensation should be awarded to the applicant as a victim in his own right; therefore, the court disagrees with the single commissioner's rationale. The father of the decedent is not claiming through his

son nor is he presently entitled to do so. The wage loss suffered by the applicant is not compensable within the statute as "allowable expense," but rather is simply reimbursement under R.C. 2743.51(G) ("work loss") due to the uncontroverted personal injury incurred by this victim. While this award may appear conceptually dissonant with the award of $125.38 paid to the applicant on behalf of the decedent and entitled "allowable expense," that payment is not at issue before the court and need not be harmonized.

By this decision the court is severing the claim of Mr. Fife from the claim on behalf of the decedent, claim No. V86-47213. The clerk is hereby directed to create a case file for the claim of Isaac Fife and assign it claim No. V86-55801. This claim relates back to September 10, 1986, the filing date in claim No. V86-47213. The court by this judicial severance is not implying that the single commissioner or the panel should adopt a practice of *sua sponte* severance. This is a unique circumstance created in part by Mr. Fife's discovery of his son and the extreme trauma caused thereby.

The award of $1,375.38, consisting of $1,250 in funeral expense and $125.38 in allowable expense, previously granted in claim No. V86-47213, has been paid to the applicants. The record reveals that the Attorney General's investigation demonstrates that the applicant's compensable lost wages total $2,624.43. This amount is not in dispute and the court is of the opinion that it is reasonable. Judgment is hereby rendered for the applicant in claim No. V86-55801 in the amount of $2,624.43.

*Judgment accordingly.*

RUSSELL LEACH, J., retired, of the Franklin County Municipal Court, sitting by assignment.