[Cite as *In re Mitchell*, 2012-Ohio-4679.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

IN RE: LISA M. MITCHELL

LISA M. MITCHELL

       Applicant

Case No. V2010-50396

Commissioners:
Susan G. Sheridan, Presiding
William L. Byers IV
Necol Russell-Washington

ORDER OF A THREE-
COMMISSIONER PANEL

{¶1} On June 26, 2007, the applicant, Lisa Mitchell, filed a compensation application as the result of the death of her son Christopher Mitchell. The claim was assigned Claim No. V2007-52379-0, by the Attorney General. Although the Attorney General determined in a finding of fact and decision that Christopher Mitchell qualified as a victim of crime and the applicant was granted an award of reparations in the amount of $949.74, which represented $858.25 for payment of the funeral expense to FJ Corrigan Funeral Services and $91.49 to the applicant for lost wages she suffered to attend her son's funeral, the Attorney General denied the applicant's claim for counseling expenses pursuant to R.C. 2743.51(F)(2), since the applicant did not qualify as an immediate family member under R.C. 2743.51(W). Upon reconsideration, the Attorney General rendered a Final Decision refusing to modify the initial decision and asserting that the applicant was not eligible because she did not reside in the same household as her son. Consequently, her claim for additional work loss was denied.

{¶2} On May 5, 2008, the applicant filed an appeal from the Attorney General's Final Decision of April 18, 2008. The Court of Claims assigned this appeal Claim No.

V2008-30421. On January 22, 2009 at 11:25 A.M., a panel of commissioners heard the appeal. At that time it was determined that the applicant's claim that she was a victim in her own right or an indirect victim was not ripe for appeal since the Attorney General's office had not investigated that issue. Consequently, the applicant was directed to file a compensation application on her own behalf.

{¶3} On April 6, 2009, the applicant filed a compensation application asserting that she was a victim in her own right as the result of the murder of her son, Christopher Mitchell. On August 4, 2009, the Attorney General issued a finding of fact and decision denying the applicant's claim. The Attorney General asserted that she did not have direct awareness of the crime and did not arrive on the scene in the immediate aftermath of the crime. Accordingly, the applicant did not satisfy the requirements contained in *In re Clapacs* (1989), 58 Ohio Misc. 2d 2 and her claim was denied.

{¶4} On August 13, and 31, 2009, the applicant filed requests for reconsideration. Applicant asserted she qualified as an indirect victim of crime since she was the mother of the murder victim, was permitted access to the crime scene by police, and suffered psychological injury which impeded her daily life. On March 8, 2010, the Attorney General rendered a Final Decision again finding that the applicant did not prove she had direct awareness of the crime or had come upon the scene in its immediate aftermath. Furthermore, the applicant has been unable to prove, by a reasonable degree of medical or psychological certainty, that her medical expenses were related conditions caused by her son's death.

{¶5} On April 2, 2010, the applicant filed a notice of appeal from the March 8, 2010 Final Decision of the Attorney General. Hence, a hearing was held before a panel of commissioners on November 17, 2010 at 12:15 P.M.

{¶6} On June 24, 2011, a panel of commissioners rendered a decision affirming the Final Decision of the Attorney General. The panel heard testimony presented by Detective Kathleen Carlin of the Cleveland Division of the Police Homicide Unit. Detective Carlin testified to the best of her knowledge Lisa Mitchell was never present at

the crime scene on the day of the murder. Furthermore, the detective was unaware of whether Ms. Mitchell ever went to the crime scene or the coroner's office. Finally, the detective stated that the apartment was orderly, there were no signs of a struggle, and the decedent's bloody clothing and a towel were removed prior to the applicant's arrival outside the crime scene. The applicant did not attend the hearing so she was unable to cross-examine the detective or provide testimony concerning her observations at the crime scene.

{¶7} On July 18, 2011, the applicant filed a notice of appeal from the Decision of the Panel of Commissioners to a judge of the Court of Claims. On November 4, 2011, a hearing was held before a judge of the Court of Claims. On November 22, 2011, Judge Travis rendered a decision remanding this claim to a panel of commissioners since:

    a.      "the panel of commissioners did not have the opportunity to fully consider all the relevant evidence in this matter. Therefore, in the interest of justice, the court will remand applicant's claim to a three commissioner panel to consider applicant's testimony and additional evidence presented by the parties."

    b.      The hearing based on the judge's remand was held on February 22, 2012 at 10:00 A.M.

{¶8} The applicant, Lisa Mitchell, and Assistant Attorney General Matthew Hellman attended the hearing and presented testimony and oral arguments for the panel's consideration.

{¶9} The applicant contends that she went to the crime scene after the incident and although her son's body was gone, "part of his remains were present." Due to her witnessing the scene she suffered severe psychological injury so disabling that she has been unable to return to work. The applicant also related that the following month her father died of a massive heart attack and eight months later her mother died.

{¶10} Establishing whether the applicant is a victim in her own right is dependent upon the testimony of the applicant. Even if the applicant proves that she saw her son's remains, she must present sufficient evidence to tie her psychological counseling to her son's death rather than the subsequent deaths of her parents.

{¶11} The applicant testified that she arrived on the crime scene approximately one hour after her son's body was removed and she did not go into her son's apartment at that time. She did not go to the coroner's office to view his body. However, two days after the incident she went to her son's apartment and viewed blood and brain matter on the floor. She stated that the apartment was in disarray with drawers opened and furniture moved. She asserted that her son was a meticulous housekeeper so the disruption of the apartment was very noticeable to her. Finally, she described how someone had attempted to wipe the blood off the floor but such attempt was unsuccessful and blood and brain matter remained.

{¶12} The applicant described how she immediately entered counseling after the incident. She participated in Victim's Assistance counseling, counseling provided by her employer, until her personal insurance ran out. She asserted she still attends counseling since her relocation to South Carolina and receives medication to help her cope with her loss.

{¶13} Upon cross-examination, the applicant admitted that she was working at Trader Joe's and attending school at the time of the crime. She was also working at Brehms Orthopedics as a worker's compensation coordinator. After her son was killed, she left the job at Brehms Orthopedics, after taking a short leave of absence she returned to work for Trader Joe's for another three months. She asserted she tried to commit suicide on September 11, 2009 and never returned to Trader Joe's after that incident.

{¶14} A week after her son's death she started counseling. Initially she saw the Cuyahoga County Coroner's Grief Counselor. There was no cost for this service. She then saw Dr. Jeffrey Salkin, her insurance covered this cost although she was required to pay co-pays. She stated she started counseling with Dr. Salkin approximately a

week prior to the death of her father.   Ms. Mitchell related that she saw Dr. Salkin for issues relating to grief suffered as the result of the murder of her son, the death of her father, marital issues, and problems she was having with her daughter.   Ms. Mitchell contends that her marital problems, trouble with her father, and the subsequent death of her father related to the death of her son, however she does not attribute the death of her mother, who died approximately eight months after her father's death, to the death of her son.   Whereupon, the applicant's testimony was concluded.

{¶15} In closing the applicant described the emotional toll her son's death has taken on her life.   She described it as a life changing event, one she must cope with on a daily basis.

{¶16} The Attorney General asserted for this panel to find that the applicant qualified as a victim in her own right, the panel must rely on *In re Hill*, V2003-41158tc (3-24-04)aff'd jud (6-9-04).   The Attorney General stated upon the testimony presented at the hearing there might be sufficient grounds to qualify the applicant based on the holding in *Hill*. However, even if that result is reached the question still remains as to what her losses are.

{¶17} The problem with work loss is that she continued to work at Trader Joe's until her attempted suicide which occurred on September 11, 2009.   It appears any work loss she sustained was not the result of the murder of her son, but the attempted suicide.

{¶18} It appears from testimony, that the applicant went to counseling immediately after the murder of her son.   However, initially there was no cost for the counseling services. Later she did incur out-of-pocket expense but she has been treated for a variety of issues:   the death of her parents, marital trouble, problems with her daughter, attempted suicide, and the death of her son.   Accordingly, it is unknown what percentage of the counseling expenses are related to the death of her son. Accordingly, this is a very difficult case which raised a variety of issues which the panel must grapple with.

**{¶19}** Finally, the applicant stated that she had to return to work at Trader Joe's since she was the sole bread winner in the family. Furthermore, she reduced her working hours from 38 to 27 hours per week. The applicant submitted an attorney fee bill she received from her former attorney Gregory Robey that was identified as Applicant's Exhibit 1 and admitted into evidence. Whereupon, the hearing was concluded.

**{¶20}** On March 21, 2012, the applicant filed a letter from Trader Joe's dated March 15, 2012. The letter in pertinent part stated:

    a.    "This is to confirm that Lisa Mitchell was employed at Trader Joe's Company from 09/21/2005 through 4/03/2010.

    b.    "While employed, Ms. Mitchell went on two leave of absences as follows:

    c.    "9/21/2007 to 11/15/2007 Personal

    d.    "9/11/2009 to 4/03/2010   Medical"

**{¶21}** On April 3, 2012, the Attorney General filed a reply to the applicant's additional documents. The Attorney General submits that the letter from Trader Joe's demonstrates that the first work loss incurred by the applicant happened over three months after the death of her son. Furthermore, her weekly hours were consistent with the hours worked prior to her son's death. The Attorney General states: "[i]n light of this, Ms. Mitchell's leave of absence from work does not - in and of itself - establish the necessary degree of debilitating injury."

**{¶22}** Based upon the Supreme Court holdings in *Paugh v. Hanks* (1983), 6 Ohio St. 3d 72, 6 OBR 114 451 N.E. 2d 83 and *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St. 3d 84, 545 N.E. 2d 83, the Court of Claims has espoused certain qualitative factors to be examined when determining who may qualify as a victim in their own right.

**{¶23}** *In re Clapacs* (1989), 58 Ohio Misc. 2d 1, at paragraphs one and two of the syllabus states:

    a.    "1. The Court of Claims, Victims of Crime Division, will use a case-by-case analysis to ascertain the impact a criminal incident may

have upon a person other than the individual directly involved in the crime and will consider, *inter alia*, the following factors: (a) the person's proximity to the location of the crime, (b) the relationship between that person and the person actually assaulted, and (c) the shock directly attributable to the sensory and contemporaneous observance of the incident.   (R.C. 2743.51(L), applied).

b.            "2. The phrase 'personal injury' contained in the R.C. 2743.51(L) definition of 'victim' includes both psychological injury as well as physical harm.   Thus, emotional distress, experienced as a result of criminal activity, constitutes 'personal injury'."

c.            *In re Fife* (1989), 59 Ohio Misc. 2d 1, at paragraph two of the syllabus states:

d.            "2. The term 'personal injury,' as used in R.C. 2743.51(L)(1) in reference to a psychological injury, requires a showing of more than mere sorrow, concern or mental distress.   That is, the psychological injury must be of such a debilitating nature as to impede or prohibit the resumption or enjoyment of day-to-day activities."

{¶24} This court recognized in *Clapacs* and *Fife*, that emotional distress due to a direct awareness of a criminal incident can be classified as personal injury.   As such, persons other than the victim per se may qualify as victims in their own right.   The determination of whether a person qualifies as a victim in one's own right is to be based upon a case-by-case analysis.   See *Clapacs*.   Additionally, the court also determined that the psychological injury suffered by the injured party must be so debilitating that it impedes or prohibits participation in day-to-day activities.   The court emphasized that one must analyze the nature of the alleged injury and its relationship to the criminal incident.   See *Fife*.   Subsequently, a panel of commissioners *In re Anderson* (1991), 62 Ohio Misc. 2d 268, 598 N.E. 2d 223, modified the contemporaneous sensory perception requirement to allow for instances where an individual arrives at the scene shortly after the incident.

Also in *Anderson*, the court recognized that the rationale in *Clapacs* would not be viewed to open a floodgate for fraudulent or imagined injury claims. *In re Hill*, V2003-41158jud (6-9-04), 2004-Ohio-4169.

{¶25} The applicant has the burden to prove she is a victim by a preponderance of the evidence. See *Clapacs* and *Fife*.

{¶26} The applicant must prove criminally injurious conduct by a preponderance of the evidence. *In re Rios* (1983), 8 Ohio Misc. 2d 4.

{¶27} Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

{¶28} Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised

{¶29} between the parties in a cause. The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."

{¶30} From review of the case file, the subsequent filings of the parties, and upon full and careful consideration given to the testimony of the applicant and the arguments of the parties, we find the applicant has failed to prove, by a preponderance of the evidence that she qualifies as a victim in her own right pursuant to the holdings of *Clapacs* and *Fife.*

{¶31} In order for the applicant to qualify as a victim in accordance with the holdings of *Clapacs* and *Fife* she must meet all the conditions. In other words the applicant must establish by a preponderance of the evidence that 1) she had a relationship with the primary victim, 2) she had a direct awareness of the criminally injurious conduct or arrived at the scene in its immediate aftermath, 3) she experienced shock directly attributable to the sensory and contemporaneous observation of the crime scene, and 4) she sustained severe psychological injury which impeded or prohibited her from

performing or enjoying her daily activities.  This psychological injury must be more severe than mere sorrow or grief.

{¶32} We find the applicant met the first prong of the test enumerated in *Clapacs* and *Fife* since the primary victim was her son. Without specifically addressing whether applicant met the second and third prongs of the *Clapacs* and *Fife* test, we find that applicant does not qualify as a victim in her own right because applicant has not satisfied the fourth prong of the test - severe psychological injury which impeded or prohibited her from performing or enjoying her daily activities.

{¶33} The applicant testified at the time of the crime she was attending the National Institute of Technology in Akron from which she subsequently received a degree.  She was working at both Brehms Orthopedics and Trader Joe's at the time of the incident. She stated she terminated her employment with Brehms within a week of her son's death but continued working at Trader Joe's.  The letter from Trader Joe's reveals she did not take time off until September 21, 2007 over three months after her son's death. A review of the applicant's work history as provided by the Attorney General in his filing of April 3, 2012, reveals the following: From October 2, 2005 until June 10, 2007, she worked an average of 45.3 hours per pay period, after her son's death until September 21, 2007 she worked an average of 49.9 hours per pay period, and from her return from personal leave until April 26, 2009, the latest data provided by the Attorney General, she worked an average of 59 hours per pay period.  Accordingly, we find no correlation between the death of her son and her working hours.

{¶34} By contrast in *In re Freeman*, V2000-02330tc (1-14-02) aff'd jud (4-23-02) a mother who observed her son in a bloodied condition in a hospital room in preparation for surgery which he did not survive, was unable to return to work for six months, while in *Santiago*, the applicant was unable to work for eight weeks.

{¶35} The period of work loss is not the sole factor in judging whether the shock attributable to the observation caused the requisite psychological trauma.  Such a finding must be supported by a counselor, psychologist, psychiatrist, psychotherapist, or

mental health counselor who provides an opinion within a reasonable degree of medical or psychological certainty that the applicant sustained severe psychological injury which impeded or prohibited her from performing or enjoying her daily activities.   The case file lacks such documentation.   Mere sorrow, concern or mental distress are not sufficient to satisfy the psychological trauma necessary to qualify as an indirect victim.

{¶36} Accordingly, we find the applicant has not satisfied her burden of proof and the panel's decision of June 24, 2011 is adopted.

{¶37} IT IS THEREFORE ORDERED THAT

{¶38} Applicant's Exhibit 1 is admitted into evidence;

{¶39} Applicant's claim is DENIED and judgment is rendered for the state of Ohio;

{¶40} Costs are assumed by the court of claims victims of crime fund.

_____
SUSAN G. SHERIDAN
Presiding Commissioner


_____
WILLIAM L. BYERS, IV
Commissioner


_____
NECOL RUSSELL-WASHINGTON
Commissioner

ID #I:\Victim Decisions to SC Reporter\Panel Decisions\2012\March - May 2012\V2010-50396 Mitchell.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Cuyahoga County Prosecuting Attorney and to:

Filed 3-13-12

Jr. Vol. 2282, Pgs. 136-140
Sent to S.C. reporter 10-9-12