[Cite as *In re Lacour-Belyn*, 2012-Ohio-4684.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

IN RE: CHERYL LACOUR-BELYN

CHERYL LACOUR-BELYN

     Applicant

Case No. V2012-70017

Commissioners:
Necol Russell-Washington, Presiding
William L. Byers IV
E. Joel Wesp

ORDER OF A THREE-COMMISSIONER PANEL

{¶1} On September 9, 2011, the applicant, Cheryl LaCour-Belyn filed a compensation application as the result of the death of her daughter on August 11, 2011. The applicant asserts she was an indirect or secondary victim as the result of her daughter's death. On November 7, 2011, the Attorney General issued a finding of fact and decision determining pursuant to the decision in *In re Clapacs* (1989), 58 Ohio Misc. 2d 1, that the applicant did not qualify as a victim in her own right since she was unable to meet the requirements delineated in *Clapacs*. In order to meet the qualifications one must satisfy each element. *Clapacs* requires: 1) The person has a close relationship with the one upon whom the crime was committed; 2) The person had a direct awareness of the crime or arrived in the immediate aftermath; and 3) The person sustained psychological injury so severe that it impeded or prohibited the person from doing or enjoying his or her day-to-day activities.

{¶2} The Attorney General contends that the applicant did not witness the death of her daughter, did not view the crime scene after the crime, and was away from the scene for approximately three months and the scene had substantially changed when she returned. For these reasons the applicant's claim was denied.

{¶3} On December 6, 2011, the applicant submitted a request for reconsideration. On December 13, 2011, the Attorney General rendered a Final Decision finding no reason to modify the initial decision. On January 11, 2012, the applicant filed a notice of appeal from the December 13, 2011 Final Decision of the Attorney General. Hence, a hearing was held before this panel of commissioners on April 4, 2012 at 12:00 P.M.

{¶4} Applicant, Cheryl LaCour-Belyn and her attorney, John Waddy, attended the hearing, while Assistant Attorney General Gwynn Kinsel represented the state of Ohio.

{¶5} The Attorney General contended that the applicant did not qualify as an indirect victim of crime since she did not arrive immediately after the occurrence of the criminally injurious conduct nor did she have contemporaneous observation of the incident. When she arrived at the scene, police officers had already closed the crime scene and she did not observe the interior of the home until three months later. Accordingly, the Attorney General's Final Decision should be affirmed.

{¶6} The applicant contends that she has met the factors enumerated in *Clapacs* and thus qualifies as a victim in her own right. The applicant asserts she was at the location of the incident for approximately four hours and the crime scene was constantly moving as the criminal investigation progressed. Accordingly, the Attorney General's Final Decision should be reversed.

{¶7} Cheryl LaCour-Belyn was called to testify. She related that her eighteen-year-old daughter C. Celeste LaCour Belyn resided with her at the time of the incident. On the day of the incident, she was notified via a telephone call a shooting had occurred involving her daughter. Shortly thereafter her son arrived at her place of employment and transported her to her residence. The applicant estimates she arrived within three to five minutes of receiving the telephone call.

{¶8} Upon her arrival at her home she observed one of her dogs loose in the driveway and two police cars in front of her house. Upon inquiry to a police officer, she was informed that her daughter's whereabouts were unknown. At that time she was not allowed to enter the premises. A short time later, she observed the twin brother of her

daughter's boyfriend speaking to police. She confronted him and he informed her that her daughter was dead. She then watched the twin brother and the police officer search the area around her residence.

{¶9} Approximately four hours later she was informed by a police officer that her daughter was dead. However, she was unaware of her daughter's location at that time.

{¶10} The applicant admitted that she never entered the house until three months after her daughter's death, and the house was remodeled prior to her return. The applicant stated irrespective of whether she would have been allowed to enter the home on the day of the incident her grief would have still been the same.

{¶11} Upon cross-examination, Cheryl LaCour-Belyn admitted that after police released the crime scene she was unable to enter the home and never observed the aftermath of the murder. She testified she had the common area and her daughter's bedroom remodeled to totally change the appearance. The applicant related the remodeling was directed by her from an offsite location. Whereupon, the applicant's testimony was concluded.

{¶12} The Attorney General called Detective William Gillette of the Columbus Police Department to testify. Detective Gillette stated that he responded to the crime scene on August 11, 2011. Detective Gillette related that the crime scene as well as an adjoining residence were cordoned off. However, no evidence was collected from the exterior of the crime scene or any other exterior location. The detective did relate that the offender had removed the decedent's body from the house and transported the body via his vehicle to a location in the City of Whitehall.

{¶13} Upon cross-examination, Detective Gillette related that the crime scene tape was in place when he arrived at the scene. The crime scene tape encompassed a large area surrounding the residence as well as adjoining homes and streets. The detective indicated that the crime scene tape was placed in such an expansive area because the investigating officers initially were uncertain as to where the crime or crimes occurred.

The detective conceded that removing the decedent's body from the house and the offender placing the body in his car expanded the scope of the crime scene.

{¶14} On redirect, Detective Gillette reiterated that no evidence was collected outside of the home. Whereupon, the testimony of Detective Gillette was concluded.

{¶15} In closing, the Attorney General recounted that the only issue in dispute is whether the applicant qualifies as an indirect victim of crime and in particular if she experienced shock directly attributable to the sensory and contemporaneous observance of the incident, or its immediate aftermath. In the case at bar, the applicant never observed the crime scene or her daughter's body, and upon return to the residence the home had been remodeled to remove any trace of what had transpired on August 11, 2011. The Attorney General contends this case is analogous to this court's holding in *In re Steele*, V2001-32542tc (3-1-02) aff'd jud (7-25-02). In that case the panel determined the applicant could not qualify as an indirect victim since he learned of his daughter's death via telephone and while he spoke with police he was not allowed to enter the crime scene or view its immediate aftermath. In this case the applicant did not view the location where the crime occurred until three months after the incident and only after the crime scene areas had been remodeled to alter their appearance. Accordingly, the Attorney General urges this panel to affirm the Attorney General's Final Decision.

{¶16} In closing, the applicant asserted that the panel should revisit its holding in *Steele*. In this case not only did the applicant immediately arrive at the scene and engage the police, she also observed the police search the area surrounding the home and adjacent environs. The applicant contends she arrived at the scene before police officers determined that there was an active crime scene. Applicant contended that she observed the officers search the perimeter, and thus the collection of evidence was unnecessary, simply viewing the outside of her residence should satisfy her burden of proof. Accordingly, the Attorney General's decision should be reversed. Whereupon, the hearing was concluded.

{¶17} Based upon the Supreme Court holdings in *Paugh v. Hanks* (1983), 6 Ohio St. 3d 72, 6 OBR 114 451 N.E. 2d 83 and *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St. 3d 84, 545 N.E. 2d 83, the Court of Claims has espoused certain qualitative factors to be examined when determining who may qualify as a victim in their own right.

{¶18} *In re Clapacs* (1989), 58 Ohio Misc. 2d 1, at paragraphs one and two of the syllabus states:

a. "1. The Court of Claims, Victims of Crime Division, will use a case-by-case analysis to ascertain the impact a criminal incident may have upon a person other than the individual directly involved in the crime and will consider, *inter alia*, the following factors: (a) the person's proximity to the location of the crime, (b) the relationship between that person and the person actually assaulted, and (c) the shock directly attributable to the sensory and contemporaneous observance of the incident. (R.C. 2743.51(L), applied).

b. "2. The phrase 'personal injury' contained in the R.C. 2743.51(L) definition of 'victim' includes both psychological injury as well as physical harm. Thus, emotional distress, experienced as a result of criminal activity, constitutes 'personal injury'."

c. *In re Fife* (1989), 59 Ohio Misc. 2d 1, at paragraph two of the syllabus states:

d. "2. The term 'personal injury,' as used in R.C. 2743.51(L)(1) in reference to a psychological injury, requires a showing of more than mere sorrow, concern or mental distress. That is, the psychological injury must be of such a debilitating nature as to impede or prohibit the resumption or enjoyment of day-to-day activities."

{¶19} This court recognized in *Clapacs* and *Fife*, that emotional distress due to a direct awareness of a criminal incident can be classified as personal injury. As such, persons other than the victim per se may qualify as victims in their own right. The determination

of whether a person qualifies as a victim in one's own right is to be based upon a case-by-case analysis.  See *Clapacs*.  Additionally, the court also determined that the psychological injury suffered by the injured party must be so debilitating that it impedes or prohibits participation in day-to-day activities.  The court emphasized that one must analyze the nature of the alleged injury and its relationship to the criminal incident.   See *Fife*.  Subsequently, a panel of commissioners *In re Anderson* (1991), 62 Ohio Misc. 2d 268, 598 N.E. 2d 223, modified the contemporaneous sensory perception requirement to allow for instances where an individual arrives at the scene shortly after the incident. Also in *Anderson*, the court recognized that the rationale in *Clapacs* would not be viewed to open a floodgate for fraudulent or imagined injury claims.   *In re Hill*, V2003-41158jud (6-9-04), 2004-Ohio-4169.

{¶20} The applicant has the burden to prove she is a victim by a preponderance of the evidence.   See *Clapacs* and *Fife*.

{¶21} If the applicant is unable to view the crime scene or arrive immediately after the occurrence and is unable to view the aftermath, the applicant cannot satisfy a necessary element of the *Clapacs / Fife* requirements having a contemporaneous sensory perception of the criminally injurious conduct.   See *In re Steele*, V2001-32542tc (3-1-02) aff'd jud (7-1-02); *In re Racey* (1991), 62 Ohio Misc. 2d 317; *In re Anderson* (1991), 62 Ohio Misc. 2d 268; and *In re Hill*, V2003-41158tc (3-24-04), 2004-Ohio-1892 aff'd jud (6-9-04), 2004-Ohio-4169.

{¶22} R.C. 2743.52 (A) places the burden of proof on the applicant to satisfy the Court of Claims Commissioners that the requirements for an award have been met by a preponderance of the evidence.   *In re Rios* (1983), 8 Ohio Misc. 2d 4, 8 OBR 63, 455 N.E. 2d 1374.

{¶23} Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

{¶24} Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a cause. The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."

{¶25} From review of the case file and with full and careful consideration given to the testimony of the applicant and Detective Gillette and the arguments of the parties, we find the applicant has failed to prove, by a preponderance of the evidence, that she qualifies as a victim in her own right pursuant to the holding in *Clapacs* and *Fife*.

{¶26} In order for the applicant to qualify as a victim in accordance with the holdings of *Clapacs* and *Fife* she must meet all the conditions. In other words the applicant must establish by a preponderance of the evidence that 1) she had a relationship with the primary victim, 2) she had a direct awareness of the criminally injurious conduct or arrived at the scene in its immediate aftermath, 3) she experienced shock directly attributable to the sensory and contemporaneous observation of the crime scene, and 4) she sustained severe psychological injury which impeded or prohibited her from performing or enjoying her daily activities.

{¶27} We find the applicant met the first prong of the test enumerated in *Clapacs* and *Fife* since the primary victim was her daughter. She met the second and fourth prong of the test since she had direct awareness that the criminally injurious conduct had occurred and witnessed the police secure the crime scene. Also, the Attorney General conceded that a licensed independent social worker diagnosed her with severe post traumatic stress disorder, and her physician documented that she was unable to work for six months. However, she has been unable to establish the third prong of the test that "she experienced shock directly attributable to the sensory and contemporaneous observation of the crime scene." *Clapacs and Fife.*

{¶28} The applicant by her own admission never observed her daughter's body or the aftermath of the crime scene. The applicant only returned to her home after the area where the crime had occurred had been remodeled and its appearance altered from the

day in question.   While we sympathize with the applicant for her loss we cannot find by a preponderance of the evidence that she satisfied her burden of proof with respect to establishing each and every element of the requirements set forth in *Clapacs* and *Fife* to qualify as a victim of crime in her own right.   Accordingly, the December 13, 2011 decision of the Attorney General is affirmed.

{¶**29**} IT IS THEREFORE ORDERED THAT

{¶**30**} The December 13, 2011 decision of the Attorney General is AFFIRMED;

{¶**31**} This claim is DENIED and judgment is entered for the state of Ohio;

{¶**32**} Costs are assumed by the court of claims victims of crime fund.

 

_____
NECOL RUSSELL-WASHINGTON
Presiding Commissioner

 

_____
WILLIAM L. BYERS IV
Commissioner

 

_____
E. JOEL WESP
Commissioner

ID #I:\Victim Decisions to SC Reporter\Panel Decisions\2012\March - May 2012\V2012-70017 Lacour-Belyn.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Franklin County Prosecuting Attorney and to:

Filed 5-22-12
Jr. Vol. 2283, Pgs. 22-30
Sent to S.C. reporter 10-9-12